**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| AMY DGINGUERIAN A/K/A AMY WEBER, ARIANNY CELESTE LOPEZ, TARA LEIGH PATRICK A/K/A CARMEN ELECTRA, CAMILA DAVALOS, CIELO JEAN GIBSON, DANIELLE RUIZ, DENISE TRLICA A/K/A DENISE MILANI, JACLYN SWEDBERG, JAIME EDMONDSON-LONGORIA, JESSICA BURCIAGA, INA SCHNITZER A/K/A JORDAN CARVER, LINA POSADA, LUCY PINDER, PAOLA CAÑAS, SARA UNDERWOOD, TIFFANY TOTH GRAY, and TYRAN MAKELLE RICHARD, | Civil Action No. _____ |
| Plaintiffs, | **COMPLAINT**<br>(Jury Trial Demanded) |
| - against - | |
| PORKY'S CABARET, INC. d.b.a. BELLA'S CABARET, | |
| Defendant. | |

**<u>COMPLAINT</u>**

COME NOW Plaintiffs AMY DGINGUERIAN A/K/A AMY WEBER,

ARIANNY CELESTE LOPEZ, TARA LEIGH PATRICK A/K/A CARMEN ELECTRA,

CAMILA DAVALOS, CIELO JEAN GIBSON, DANIELLE RUIZ, DENISE TRLICA

A/K/A DENISE MILANI, JACLYN SWEDBERG, JAIME EDMONDSON-LONGORIA,

JESSICA BURCIAGA, INA SCHNITZER A/K/A JORDAN CARVER, LINA POSADA,

LUCY PINDER, PAOLA CAÑAS, SARA UNDERWOOD, TIFFANY TOTH GRAY,

and TYRAN MAKELLE RICHARD (collectively, "Plaintiffs" or "Models"), by and

through undersigned counsel, and for their Complaint against Defendant PORKY'S

CABARET. doing business as BELLA'S CABARET state as follows:

## INTRODUCTION

1.     Defendant has pirated the images, likeness and/or identity of each Plaintiff Model for purely self-serving commercial purposes – to advertise, promote and market Defendant's own business interests on social media accounts owned, operated, hosted, or controlled by Defendant.

2.     At all times relevant to this action, Plaintiffs were and are the exclusive owners of all rights, title, and interest to their images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

3.     Defendant is unapologetic, chronic and habitual infringers.

4.     Defendant did not negotiate for or purchase the images.

5.     Defendant did not seek or obtain consent or authority to use Plaintiffs' images for any purpose.

6.     Plaintiffs did not agree, nor would Plaintiffs ever agree, to Defendant's use of their images, likeness and/or identity.

7.     Had Plaintiffs been afforded the opportunity to consider whether to consent and release rights as to the use of their images, Plaintiffs would have promptly and unequivocally declined.

8.     Defendant's conduct is therefore misleading and deceptive by falsely representing that Plaintiffs are somehow affiliated with Defendant, have contracted to perform at and/or participate in events at Defendant's strip club, have been hired to promote, advertise, market or endorse the events and other activities offered at Defendant's strip club, and/or that Plaintiffs have attended or will attend each event and have

participated in or intend to participate in the activities advertised.

9.      Defendant's conduct is also injurious to the Plaintiffs.

10.     Defendant circumvented the typical arms-length negotiation process entirely and pirated the subject images. In doing so, **Defendant has utterly deprived Plaintiffs the right and ability to say "no."**

11.     Defendant has prevented Plaintiffs from engaging in arms-length negotiations regarding the terms and conditions of use of Plaintiffs' images, including the term of any release, remuneration per use, or the ability to decline the business opportunity entirely. In short, Defendant deprived Plaintiffs of the ability to protect their image, brand and reputation.

12.     In the end, Defendant gained an economic windfall by using the images of professional and successful models and actresses for Defendant's own commercial purposes, luring and enticing patrons worldwide to view the images and visit Defendant's strip club, without having to compensate Plaintiffs a single penny for such usage. Plaintiffs, however, sustained injury to their images, brand and marketability by shear affiliation with Defendant's strip club.

13.     Having operated a business in the adult entertainment and striptease industry, Defendant is well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendant's commercial benefit.

14.     By defaming and embarrassing Plaintiffs and associating Plaintiffs' image and likeness with Defendant's strip club, Defendant's conduct is not merely a misuse in connection with an innocuous brand or events.

## PARTIES

### A. Plaintiffs

15.     Given the multitude of violations harming numerous models, and the similarity of misconduct from Defendant harming all models, in the interest of judicial economy, Plaintiffs, through counsel, respectfully consolidate all actionable violations *presently known* into this single collective action on behalf of the following models:

16.     PLAINTIFF Weber is, and at all times relevant to this action was, a professional model and a resident of Los Angeles County, in the State of California.

17.     PLAINTIFF Lopez is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

18.     PLAINTIFF Electra is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

19.     PLAINTIFF Davalos is, and at all times relevant to this action was, a professional model and resident of Miami-Dade County, in the State of Florida.

20.     PLAINTIFF Gibson is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

21.     PLAINTIFF Ruiz is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

22.     PLAINTIFF Milani is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

23.     PLAINTIFF Swedberg is, and at all times relevant to this action was, a professional model and resident of San Bernardino County, in the State of California.

24.     PLAINTIFF Edmondson-Longoria is, and at all times relevant to this action

was, a professional model and resident of Pinellas County, in the State of Florida.

25.    PLAINTIFF Burciaga is, and at all times relevant to this action was, a professional model and resident of Fulton County, in the State of Georgia.

26.    PLAINTIFF Carver is, and at all times relevant to this action was, a professional model and resident of Orange County, in the State of California.

27.    PLAINTIFF Posada is, and at all times relevant to this action was, a professional model and resident of San Bernardino County, in the State of California.

28.    PLAINTIFF Pinder is, and at all times relevant to this action was, a professional model and resident of county of Hampshire, in the country of England.

29.    PLAINTIFF Cañas is, and at all times relevant to this action was, a professional model and resident of Miami-Dade County, in the State of Florida.

30.    PLAINTIFF Underwood is, and at all times relevant to this action was, a professional model and resident of Multnomah County, in the State of Oregon.

31.    PLAINTIFF Toth Gray is, and at all times relevant to this action was, a professional model and resident of Orange County, in the State of California.

32.    PLAINTIFF Richard is, and at all times relevant to this action was, a professional model and resident of East Baton Rouge Parish, in the State of Louisiana.

**B.  Defendant Porky's Cabaret, Inc. doing business as Bella's Cabaret**

33.    Based on publicly available records, and further upon information and belief, DEFENDANT Porky's Cabaret, Inc., doing business as Bella's Cabaret, is a corporation organized and existing under the laws of the State of Florida with a principal place of business at 885 SE 14th Street, Hialeah, Florida 33010.

34.    Bella's Cabaret holds and, at all times relevant, has held itself out as a strip

club that engages in the business of entertaining its patrons with nude and/or semi-nude dancing and alcohol.

35.     Bella's Cabaret operates the Twitter handle @BellasCabaret, which can be found at https://twitter.com/bellascabaret?lang=en, as well as a Facebook page, available at https://www.facebook.com/BellasCabaretMIA/?rf=508807912614933, and other social media accounts and websites through which it advertises its business, events, and parties. For many of these events, images of one or more of the Models were used to market and promote the events.

**JURISDICTION AND VENUE**

36.     This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have stated a claim under the Lanham Act, 28 U.S.C. § 1125(a)(1). This Court has supplemental jurisdiction over the Florida state law claims alleged herein pursuant to 28 U.S.C. § 1367.

37.     The Court has personal jurisdiction over Defendant based on their contact with the State of Florida, including but not limited to Defendant's registration to conduct business in Florida, their physical locations and principal places of business in Florida, and upon information and belief, Defendant committed, facilitated, assisted, encouraged or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of Florida.

38.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(a) and (b) because Bella's Cabaret have their principal places of business in Miami-Dade County, Florida and their acts giving rise to some the claims set forth herein occurred or originated in Miami-Dade County, which is in

the Southern District of Florida.

## FACTUAL BACKGROUND

**A. Standard and Customary Business Practices in the Modeling and Acting Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Image**

39.     In the modeling and acting industry, reputation is critical.  Protection of a model or actor's reputation is therefore of paramount importance.

40.     Plaintiffs are professional models and actresses who earn a living by promoting their images and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on their reputation and own brand for modeling, acting, hosting, and other opportunities.

41.     Plaintiffs' careers in modeling, acting, and private enterprise have value stemming from the goodwill and reputation that they have built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

42.     Plaintiffs have worked to establish themselves as reliable, reputable and professional.

43.     Plaintiffs must necessarily be vigilant in protecting their "brand" from harm, taint, or other diminution.

44.     Any improper or unauthorized use of an image, likeness and/or identity could substantially injure the career and career opportunities of Plaintiffs.

45.     In the modeling and acting industry, models and actors such as Plaintiffs typically do not have a single employer, but rather work as independent contractors for different agents or entities.

46.     Plaintiffs are responsible professionals in the ordinary course. Plaintiffs

seeks to control the use and dissemination of their image and, thus, actively participate in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

47.     Plaintiffs' vetting and selection of professional engagements involves a multi-tiered assessment, such as, but not limited to:

a.  determining whether the individual or entity seeking a license and release of Plaintiffs' images, likeness and/or identity is reputable, has reputable products or services, and, through affiliation therewith, would either enhance or harm Plaintiffs' stature or reputation;

b.  this reputational information is used in negotiating compensation which typically turns on the work Plaintiffs are hired to do, the time involved, travel and how their images are going to be used – known as "usage" (among other variables);

c.  to protect their reputation and livelihood, Plaintiffs and/or their agents carefully and expressly define the terms and conditions of use;

d.  the entire negotiated deal is reduced to and memorialized in an integrated, written agreement of limited duration (typically 1-3 years) which defines the parties' relationship. The terms and conditions of the agreement typically, unless otherwise expressly delineated, bind and are applicable to only the parties to that agreement.

48.     Endorsing, promoting, advertising or marketing the "wrong" product, service or corporate venture, or working in or being affiliated with a disreputable industry can severely impact Plaintiffs' careers by limiting or foreclosing future modeling or brand endorsement opportunities. Conversely, association with high-end companies, products, or

magazines can enhance and amplify Plaintiffs' earning potential and career opportunities by making Plaintiffs more sought after and desirable.

**B.** **Defendant has Misappropriated Plaintiffs' Images, Likeness and/or Identity Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to Plaintiffs**

49.    As set forth below, Plaintiffs' images, likeness and/or identity have been misappropriated by or at the direction of Defendant.  Defendant's conduct creates the false and misleading appearance and impression that Plaintiffs either work for Defendant, have appeared and participated or will appear and participate in activities or events at Defendant's strip club, and/or have agreed and consented to advertise, promote, market or endorse Defendant's strip club or one or more Defendant's events or activities.

### *Plaintiff Amy Weber*

50.    PLAINTIFF Amy Dginguerian a/k/a Amy Weber is an accomplished American model, actress, film producer, singer, and professional wrestler who enjoys great success in her industry.

51.    Weber's filmography includes eighteen movie and nineteen television credits, including titles such as *Saved by the Bell, Melrose Place, 7th Heaven,* and *The Young and the Restless,* and she appeared as a lead actress in Toby Keith's *Whiskey Girl* music video.

52.    Weber's modeling work includes ad campaigns for the Miller Brewing Company, Wrigley's, Chrysler, 7-UP, and Nestea brands.

53.    Weber is also an accomplished recording artist with several releases, including an album, *Let it Rain*, which charted on Billboard's United States Top 40 chart.

54.    Weber is perhaps most famous for her stint as a World Wrestling

Entertainment "Diva" and wrestler from 2005 through 2006.

55.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Weber negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

56.    DEFENDANT Bella's Cabaret used a stolen image of PLAINTIFF Weber to entice the public to visit their strip club. In December 2015, Weber's image was uploaded to Bella's Cabaret's Twitter page. The image includes Weber posed in a suggestive manner to imply that Weber is a stripper at Bella's Cabaret. The image was used without the consent of Weber and was used to intentionally give the impression that Weber is either a stripper working at the strip club or that she endorses the strip club. *See* image of PLAINTIFF Weber attached hereto as **Exhibit A** which is incorporated herein by this reference.

57.    Weber's image, likeness and/or identity in **Exhibit A** is being used by Defendant in various marketing and promotional mediums ("usages") such as advertising and on social media.

58.    Weber has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

59.    Weber has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

60.    Defendant never sought permission or authority to use Weber's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses

or any of Defendant's events.

61.     Weber never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

62.     At all times relevant to this action, Weber was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

63.     Defendant neither offered nor paid any remuneration to Weber for the unauthorized use of her image, likeness and/or identity.

64.     Defendant's use of Weber's image, likeness and/or identity in connection with Defendant's strip club impugns Weber's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

65.     Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Weber's images in their market activities and business. In doing so, Defendant has further damaged Weber.

### Plaintiff Arianny Celeste Lopez

66.     PLAINTIFF Lopez is an American Model.

67.     Lopez is best known for being a "ring girl" for The Ultimate Fighting Championship, more commonly known as UFC.

68.     Lopez has also appeared as a model in *Maxim*, *FHM*, *Playboy*, and *Sports Illustrated*.

69.     She has served as a guest on several television shows and as the host of

*UFC Ultimate Insider* and *Overhaulin'* on the TLC Network.

70.     Lopez currently enjoys three million (3,000,000) Instagram followers, over seven hundred thousand (700,000) Twitter followers, and more than six million (6,000,000) likes and followers on Facebook.[1]

71.     In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Lopez negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

72.     DEFENDANT Bella's Cabaret used stolen images of PLAINTIFF Lopez to entice the public to visit their strip club. Since December of 2014 until April 2016, Bella's Cabaret has used Lopez's image two times for the promotion and marketing of Bella's Cabaret. The image was uploaded to Bella's Cabaret's Facebook and Twitter accounts with the intention of deceiving the viewing public into believing that Lopez is a stripper at Bella's Cabaret. The image contained the following caption edited into the image by Defendant: "Always hiring entertainers, bartenders & waitresses." The advertising also included, "We are always open to outgoing people with good attitude for work" and directed individuals to the strip club's webpage. These edits were made to deceive the public into thinking that Lopez was an employee of Bella's Cabaret, which the public could see if they attended Defendant's strip club. The image was undoubtedly used with the intention to promote Bella's Cabaret. The images were used without the consent of Lopez and were altered to intentionally give the impression that Lopez is either a stripper working

---

[1] In the world of modeling, the number of online "followers" or "likes" is a strong factor in determining the earning capacity of a model.

at the strip club or that she endorses the strip club. *See* images of PLAINTIFF Lopez attached hereto as **Exhibit B** which is incorporated herein by this reference.

73.     Lopez's images, likeness and/or identity in **Exhibit B** are being used by Defendant in various marketing and promotional mediums such as advertising, on social media and for branding purposes.

74.     Lopez has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

75.     Lopez has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

76.     Defendant never sought permission or authority to use Lopez's images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

77.     Lopez never gave permission, or assigned, licensed or otherwise consented to Defendant using her images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

78.     At all times relevant to this action, Lopez was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant.

79.     Defendant neither offered nor paid any remuneration to Lopez for the unauthorized use of her images, likeness and/or identity.

80.     Defendant's use of Lopez's images, likeness and/or identity in connection with Defendant's strip club impugns Lopez's character, embarrasses her, and suggests –

falsely – her support for and participation in the adult entertainment and striptease industry.

81.     Upon information and belief, Defendant's improper use of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Lopez's images in their market activities and business. In doing so, Defendant has further damaged Lopez.

### *Plaintiff Camila Davalos*

82.     PLAINTIFF Camila Davalos is, and at all times relevant to this action was, an international model and actress.

83.     Davalos established her career in Colombia as one of the most famous and successful models by the age of 18.

84.     At age 22, Davalos became the face of the *Besame* lingerie line and quickly became in high demand as a model in the United States.

85.     Since then, Davalos has earned a reputation as a Latin American Super Model, appearing in hundreds of magazine editorials, catalogues, runway shows, and covers, including *Maxim Magazine, Imagen Magazine, Besame, SOHO TV, Rumas de la Cuidad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans,* and *Satori*.

86.     In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Davalos negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

87.     DEFENDANT Bella's Cabaret used stolen images of PLAINTIFF Davalos to entice the public to visit their strip club. In December of 2015, an image of Davalos was

uploaded to Bella's Cabaret's Twitter page. Bella's Cabaret posted a stolen image where Davalos was wearing lingerie and looking over her shoulder while sitting on a bed thereby implying that Davalos is a stripper at Bella's Cabaret. The image was used to advertise the said strip club and to invite customers to visit the clubs. The image was used without the consent of Davalos and was intentionally used to give the impression that Davalos is either a stripper working at the strip club or that she endorses the strip club. *See* image of PLAINTIFF Davalos attached hereto as **Exhibit C** which is incorporated herein by this reference.

88.    Davalos' image, likeness and/or identity in **Exhibit C** is being used by Defendant in various marketing and promotional mediums such as advertising, on social media and for branding purposes.

89.    Davalos has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

90.    Davalos has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

91.    Defendant never sought permission or authority to use Davalos' images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

92.    Davalos never gave permission, or assigned, licensed or otherwise consented to Defendant using her images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

93.    At all times relevant to this action, Davalos was and is the exclusive owner

of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant.

94.     Defendant neither offered nor paid any remuneration to Davalos for the unauthorized use of her images, likeness and/or identity.

95.     Defendant's use of Davalos' images, likeness and/or identity in connection with Defendant's strip club impugns Davalos' character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

96.     Upon information and belief, Defendant's improper use of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Davalos' images in their market activities and business. In doing so, Defendant has further damaged Davalos.

### Plaintiff Tara Leigh Patrick a/k/a Carmen Electra

97.     PLAINTIFF Tara Leigh Patrick a/k/a Carmen Electra is, and at all times relevant to this action was, an actress, recording artist, and entrepreneur with an impressive body of work that encompasses dance, television, film, comedy, and theatre.

98.     Electra attended Cincinnati's School for Creative and Performing Arts.

99.     After graduation, Electra move to Los Angeles and partner with Prince, who would go on to produce her self-titled album on his Paisley Park record label.

100.    Electra ultimately ventured into acting with regular roles on *Baywatch* and MTV's *Singled Out*.

101.    Electra is also a film actress, starring in several blockbuster hits, including *Scary Movie*, *Dirty Love*, *Cheaper by the Dozen 2*, and *Meet the Spartans*.

102.    As a model, Electra was the fact of MAX Factor, filling the same role as

Marilyn Monroe and Jaclyn Smith, which she held for two years.

103.   In 2006, Electra became a published author with the release of her book *How to be Sexy*.

104.   She also formed a dance troupe named The Bombshells who perform nationwide and has released a fitness DVD series entitled *Carmen Electra's Aerobic Striptease*.

105.   Electra has appeared live on stage at the MGM Grand in Las Vegas to sold-out audiences.

106.   Most recently, Electra starred in the film *2-Headed Shark Attack*, served as a guest judge on *Britain's Got Talent*, and made recurring guest appearances on the CW reboot of *90210*.

107.   In June of 2014, Electra returned to music and released 'Werq', which was followed by the release of a music video, and recently released a new single, "Around The World."

108.   Electra has 3.1 million Facebook followers, 691,000 Instagram followers, and 394,000 Twitter followers

109.   In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Electra negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

110.   DEFENDANT Bella's Cabaret used a stolen image of PLAINTIFF Electra to entice the public to visit their strip club. In February 2016, Bella's Cabaret uploaded an image of Electra to Bella's Cabaret's Twitter page to promote and market their strip club.

The image insinuated that Electra is a stripper at Bella's Cabaret and is welcoming the viewing public to visit the strip club. Specifically, the image showed Electra in lingerie holding onto a stripper pole. The image was used without the consent of Electra and was altered to intentionally give the impression that Electra is either a stripper working at the strip club or that she endorses the strip club.  *See* image of PLAINTIFF Electra attached hereto as **Exhibit D** which is incorporated herein by this reference.

111.    Electra's image, likeness and/or identity in **Exhibit D** is being used by Defendant in various marketing and promotional mediums such as advertising and on social media.

112.    Electra has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

113.    Electra has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

114.    Defendant never sought permission or authority to use Electra's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

115.    Electra never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

116.    At all times relevant to this action, Electra was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

117.    Defendant neither offered nor paid any remuneration to Electra for the unauthorized use of her image, likeness and/or identity.

118.    Defendant's use of Electra's image, likeness and/or identity in connection with Defendant's strip club impugns Electra's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

119.    Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Electra's image in their market activities and business. In doing so, Defendant has further damaged Electra.

### *Plaintiff Cielo Jean "CJ" Gibson*

120.    PLAINTIFF Gibson is, and at all times relevant to this action was, an accomplished model who enjoys great success in her industry.

121.    Gibson has over 59,000 Instagram followers.

122.    She has appeared in *FHM* magazine.

123.    Her career was jumpstarted when she became the *Import Tuner* model search winner.

124.    Gibson has a tremendous moto sport following as a *Falken Drift Team* model, a *Short Block Technologies Inc.* model, and a *Momo Sport* model.

125.    Gibson is also a Top Rank Boxing model.

126.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Gibson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

127.    DEFENDANT Bella's Cabaret used a stolen image of PLAINTIFF Gibson to entice the public to visit their strip club. In December 2015, Gibson's image was uploaded to Bella's Cabaret's Twitter page for promotional and marketing purposes. The image depicted Gibson in lingerie and in a suggestive pose. The image was used to excite the viewing public and to bring them to Bella's Cabaret's strip club in the hopes of meeting Gibson. Bella's Cabaret used Gibson's image to imply that Gibson is not only associated with Bella's Cabaret, but that she is also the brand and the representative of Bella's Cabaret. The images were used without the consent of Gibson and were employed to intentionally give the impression that Gibson is a stripper working at the strip club and that she endorses the strip club.  *See* images of PLAINTIFF Gibson attached hereto as **Exhibit E** which is incorporated herein by this reference.

128.    Gibson's images, likeness and/or identity in **Exhibit E** are being used by Defendant in various marketing and promotional mediums such as advertising, on social media and for branding purposes.

129.    Gibson has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

130.    Gibson has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

131.    Defendant never sought permission or authority to use Gibson's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

132.    Gibson never gave permission, or assigned, licensed or otherwise consented

to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

133.    At all times relevant to this action, Gibson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant.

134.    Defendant neither offered nor paid any remuneration to Gibson for the unauthorized use of her images, likeness and/or identity.

135.    Defendant's use of Gibson's image, likeness and/or identity in connection with Defendant's strip club impugns Gibson's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

136.    Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Gibson's image in their market activities and business. In doing so, Defendant has further damaged Gibson.

### Plaintiff Danielle Ruiz

137.    PLAINTIFF Ruiz is, and at all times relevant to this lawsuit was, a successful model and actress.

138.    Ruiz has appeared as a model of the month for *Import Turner* magazine and has been named a "Lovely Lady of the Day" by *Sports Illustrated* magazine.

139.    Ruiz has modeled for Elegant Moments, Fredricks of Hollywood, Escante Lingerie, Maxim, Body Zone Apparel, and Zigy NY Shoes.

140.    Ruiz has also appeared in several hit tv shows, including *New Girl*, *The Finder*, *Cougar Town*, *CSI*, *Entourage*, *The Jonas Brothers*, and *Friends with Benefits*.

141.    Ruiz also is active on social media with approximately 131,000 followers on Instagram and 16,800 followers on Twitter.

142.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Ruiz negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

143.    DEFENDANT Bella's Cabaret used a stolen image of PLAINTIFF Ruiz to entice the public to visit their strip club. In December 2015, Bella's Cabaret uploaded Ruiz's image to their Twitter page to advertise Bella's Cabaret and to invite the public to visit their strip club. The image was used without the consent of Ruiz and was used to intentionally give the impression that Ruiz is either a stripper working at the strip club or that she endorses the strip club. *See* image of PLAINTIFF Ruiz attached hereto as **Exhibit F** which is incorporated herein by this reference.

144.    Ruiz's image, likeness and/or identity in **Exhibit F** is being used by Defendant in various marketing and promotional mediums such as advertising and on social media.

145.    Ruiz has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

146.    Ruiz has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

147.    Defendant never sought permission or authority to use Ruiz's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses

or any of Defendant's events.

148.    Ruiz never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

149.    At all times relevant to this action, Ruiz was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

150.    Defendant neither offered nor paid any remuneration to Ruiz for the unauthorized use of her image, likeness and/or identity.

151.    Defendant's use of Ruiz's image, likeness and/or identity in connection with Defendant's strip club impugns Ruiz's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

152.    Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Ruiz's image in their market activities and business. In doing so, Defendant has further damaged Ruiz.

***Plaintiff Denise Trlica a/k/a Denise Milani***

153.    PLAINTIFF Milani is, and at all times relevant to this lawsuit was, a popular and well-known model.

154.    Milani has been modeling since 2005 and has appeared in *Sports by Brooks* and has extensively appeared as an internet model.

155.    In 2013, Milani was named one of the ten most desirable women in the world, alongside fellow supermodels Gisele Bundchen, Carmen Electra, Heidi Klum, and

Adriana Lima.

156.   Milani has approximately 640,000 followers on Instagram, 124,000 followers on Twitter, and over 6 million followers on Facebook.

157.   In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Milani negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

158.   DEFENDANT Bella's Cabaret used several stolen images of PLAINTIFF Milani to entice the public to visit their strip club. In January of 2018 and February of 2016, Bella's Cabaret used four of Milani's images for the promotion of their strip club on their Twitter page. The images implied that Milani is a stripper at said strip club and depicted her in various poses while wearing swimsuits or lingerie. The images were used without the consent of Milani and was used to intentionally give the impression that Milani is either a stripper working at the strip club or that she endorses the strip club. *See* images of PLAINTIFF Milani attached hereto as **Exhibit G** which is incorporated herein by this reference.

159.   Milani's images, likeness and/or identity in **Exhibit G** are being used by Defendant in various marketing and promotional mediums such as advertising and on social media.

160.   Milani has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

161.   Milani has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's

events.

162.     Defendant never sought permission or authority to use Milani's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's event.

163.     Milani never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

164.     At all times relevant to this action, Milani was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

165.     Defendant neither offered nor paid any remuneration to Milani for the unauthorized use of her image, likeness and/or identity.

166.     Defendant's use of Milani's image, likeness and/or identity in connection with Defendant's strip club impugns Milani's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

167.     Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Milani's image in their market activities and business. In doing so, Defendant has further damaged Milani.

### *Plaintiff Jaclyn Swedberg*

168.     PLAINTIFF Swedberg is, and all times relevant to this lawsuit was, a professional model and actress.

169.     Swedberg has modeled for, among other publications, Playboy and was

named the April 2011 Playmate of the Month and the 2012 Playmate of the Year. and her work includes runway walks, high fashion, print, and film.  Swedberg has also appeared extensively on PlayboyTV programming.

170.   Swedberg has approximately 1 million Instagram followers, more than 2.3 million Facebook followers, and 217,000 Twitter followers.

171.   In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Swedberg negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

172.   DEFENDANT Bella's Cabaret used a stolen image of PLAINTIFF Swedberg to entice the public to visit their strip club. In December of 2015, Swedberg's image was used to promote Defendant's strip club on their Twitter page. The image depicted Swedberg in lingerie and insinuated that Swedberg was a stripper at Bella's Cabaret.  The image was used without the consent of Swedberg and was altered to intentionally give the impression that Swedberg is either a stripper working at Bella's Cabaret or that she endorses Bella's Cabaret. *See* image of PLAINTIFF Swedberg attached hereto as **Exhibit H** which is incorporated herein by this reference.

173.   Swedberg's image, likeness and/or identity in **Exhibit H** is being used by Defendant in various marketing and promotional mediums such as advertising, on social media and for branding purposes.

174.   Swedberg has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

175.   Swedberg has never been hired by Defendant or contracted with Defendant

to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

176.    Defendant never sought permission or authority to use Pepaj's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

177.    Swedberg never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

178.    At all times relevant to this action, Swedberg was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

179.    Defendant neither offered nor paid any remuneration to Swedberg for the unauthorized use of her image, likeness and/or identity.

180.    Defendant's use of Swedberg's image, likeness and/or identity in connection with Defendant's strip club impugns Swedberg's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

181.    Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Swedberg's image in their market activities and business. In doing so, Defendant has further damaged Swedberg.

### *Plaintiff Jaime Edmondson-Longoria*

182.    PLAINTIFF Edmondson is, and all times relevant to this lawsuit was, a

model and actress.

183.   A former Miami Dolphins cheerleader, Edmondson appeared in *Playboy* magazine as Miss January in 2010.  Around the same time, Edmondson also appeared in several Playboy tv shows and films, including *The Bunny House* and the reality show *The Girls Next Door* on the E! Network.

184.   Edmondson then appeared as a contestant in CBS's *The Amazing Race* during the 14th and 18th seasons.

185.   Edmondson has more than 97,000 Twitter followers and 15,000 Instagram followers.

186.   In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Edmondson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

187.   DEFENDANT Bella's Cabaret used stolen images of PLAINTIFF Edmondson to entice the public to visit their strip club. On October 4, 2015, Edmondson's image was uploaded to Bella's Cabaret's Facebook, Twitter, and Instagram pages. The image was used to promote and market Bella's Cabaret with the following caption, "I need the Dolphins 2 win today, so more pictures like this one appear online, come wat football @bellascabaret." These advertisements made it appear as if Edmondson was acting on behalf of Bella's Cabaret's strip club and was wishing the viewing public to come to Bella's Cabaret to watch football with her. The use of the images implied that Edmondson represents Bella's Cabaret's strip club, that she is the brand of the strip club, and that she authorized Bella's Cabaret's strip club to use her images for promotional and marketing

purposes. The images were used without the consent of Edmondson and were altered to intentionally give the impression that Edmondson is either a stripper working at the strip club or that she endorses the strip club.  *See* images of PLAINTIFF Edmondson attached hereto as **Exhibit I** which is incorporated herein by this reference.

188.   Edmondson's images, likeness and/or identity in **Exhibit I** are being used by Defendant in various marketing and promotional mediums such as advertising, on social media and for branding purposes.

189.   Edmondson has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

190.   Edmondson has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

191.   Defendant never sought permission or authority to use Edmondson's images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

192.   Edmondson never gave permission, or assigned, licensed or otherwise consented to Defendant using her images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

193.   At all times relevant to this action, Edmondson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant.

194.   Defendant neither offered nor paid any remuneration to Edmondson for the unauthorized use of her images, likeness and/or identity.

195.    Defendant's use of Edmondson's images, likeness and/or identity in connection with Defendant's strip club impugns Edmondson's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

196.    Upon information and belief, Defendant's improper use of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Edmondson's images in their market activities and business. In doing so, Defendant has further damaged Edmondson.

### Plaintiff Jessica Burciaga

197.    PLAINTIFF Burciaga is, and at all times relevant to this lawsuit was, a model and a business owner.

198.    Burciaga has appeared in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina,* and *Lowrider Magazine*.

199.    In addition, Burciaga was named the "Playmate of the Month" in the February 2009 issue of *Playboy*, and has appeared in several episode of the E! Network reality television series, *The Girls Next Door*.

200.    Recently, Burciaga has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com.  She also launched a business venture selling a brand of hair extensions on Bellami Hair Extensions.

201.    Burciaga has 1.7 million followers on Instagram, 201,000 followers on Twitter, and more than 40,000 followers and likes on Facebook.

202.    In all instances of commercial marketing and promotion of her image,

likeness and/or identity by third parties, Burciaga negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

203.   DEFENDANT Bella's Cabaret used a stolen image of PLAINTIFF Burciaga to entice the public to visit their strip club. In October 2015, Bella's Cabaret posted an image of Burciaga to their Twitter page of Posada to promote their strip club. The image was used without the consent of Burciaga and was used to intentionally give the impression that Burciaga is either a stripper working at the strip club or that she endorses the strip club.  *See* image of PLAINTIFF Burciaga attached hereto as **Exhibit J** which is incorporated herein by this reference.

204.   Burciaga's image, likeness and/or identity in **Exhibit J** is being used by Defendant in various marketing and promotional mediums such as advertising and on social media.

205.   Burciaga has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

206.   Burciaga has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

207.   Defendant never sought permission or authority to use Burciaga's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

208.   Burciaga never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote,

market or endorse Defendant's businesses or any of Defendant's events.

209.    At all times relevant to this action, Burciaga was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

210.    Defendant neither offered nor paid any remuneration to Burciaga for the unauthorized use of her image, likeness and/or identity.

211.    Defendant's use of Burciaga's image, likeness and/or identity in connection with Defendant's strip club impugns Burciaga's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

212.    Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Burciaga's image in their market activities and business. In doing so, Defendant has further damaged Burciaga.

### Plaintiff Ina Schnitzer a/k/a Jordan Carver

213.    PLAINTIFF Carver is, and at all times relevant to this matter was, a German glamour model and actress based in the United States.

214.    Carver was a commercial spokeswoman for online German consumer electronics giant Redcoon.

215.    She has since appeared on the cover of *Britain's Zoo* magainze six times and won a contest for the racing sport seat production company COBA, later becoming their spokesmodel.

216.    Carver later won second place on the Top 100 Internet Model Newcomer of

the Year list after being nominated by Break Media.

217.    Carver has more approximately 2 million Instagram followers, 213,000 Twitter followers, and more than 5 million followers and nearly 5.5 million likes on Facebook.

218.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Carver negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

219.    DEFENDANT Bella's Cabaret used a stolen image of PLAINTIFF Carver to entice the public to visit their strip club. On September 3, 2015, Bella's Cabaret used Carver's image on their Facebook page to advertise their strip club. Further, the image insinuated that Carver is a stripper working at Bella's Cabaret's strip club. The caption next to the image provided, "PLAY THE MOMENT PAUSE THE MEMORIES STOP THE BOREDOME REWIND THE HAPPINESS ALL OF THIS IS POSSIBLE AT BELLAS CABARET CON EL PARTY MAS CALIENTE DE MIAMI!!!" The image was used without the consent of Carver and was altered to intentionally give the impression that Carver is either a stripper working at the strip club or that she endorses the strip club. *See* image of PLAINTIFF Carver attached hereto as **Exhibit K** which is incorporated herein by this reference.

220.    Carver's image, likeness and/or identity in **Exhibit K** is being used by Defendant in various marketing and promotional mediums such as advertising and on social media.

221.    Carver has never been employed by Defendant or contracted with

Defendant to participate in events at Defendant's strip club.

222.    Carver has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

223.    Defendant never sought permission or authority to use Carver's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

224.    Carver never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

225.    At all times relevant to this action, Carver was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

226.    Defendant neither offered nor paid any remuneration to Carver for the unauthorized use of her image, likeness and/or identity.

227.    Defendant's use of Carver's image, likeness and/or identity in connection with Defendant's strip club impugns Carver's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

228.    Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Carver's image in their market activities and business. In doing so, Defendant has further damaged Carver.

### *Plaintiff Lina Posada*

229.     PLAINTIFF Posada is, and at all time relevant to this action was, a fashion model and designer.

230.     A native of Baranquilla, Colombia, Posada is best known as a model for the *Besame* and *Espiral* lingerie collections.

231.     Posada has also modeled for *Paradizia Swimwear*, *Babalu Swimwear, Irgus Swinwear, Ujeans*, as well as many others.

232.     She has over 500,000 YouTube views, over 5,600 Twitter followers, more than 7,500 followers and likes on Facebook, and 92,500 followers on Instagram.

233.     In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Posada negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

234.     DEFENDANT Bella's Cabaret used a stolen image of PLAINTIFF Posada to entice the public to visit their strip club. In December of 2015, Posada's images appeared on Bella's Cabaret's Twitter page. The images were used to promote Bella's Cabaret's strip club, were used without the consent of Posada, and were used to intentionally give the impression that Posada is either a stripper working at the strip club or that she endorses the strip club. On November 14, 2017, Bella's Cabaret posted a picture to their Facebook page which contained a poster advertisement inside the club that including the image of Posada with the caption "The Sexiest Ladies" and the Bella's Cabaret logo. This image was used to promote Bella's Cabaret strip club, was used without the consent of Posada, and was altered to intentionally give the impression that Posada is either a stripper working at the strip club or that she endorses the strip club. *See* images of PLAINTIFF Posada attached

hereto as **Exhibit L** which is incorporated herein by this reference.

235.   Posada's image, likeness and/or identity in **Exhibit L** is being used by Defendant in various marketing and promotional mediums such as advertising and on social media.

236.   Posada has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

237.   Posada has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

238.   Defendant never sought permission or authority to use Posada's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

239.   Posada never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

240.   At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

241.   Defendant neither offered nor paid any remuneration to Posada for the unauthorized use of her image, likeness and/or identity.

242.   Defendant's use of Posada's image, likeness and/or identity in connection with Defendant's strip club impugns Posada's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

243.    Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Posada's image in their market activities and business. In doing so, Defendant has further damaged Posada.

### Plaintiff Lucy Pinder

244.    PLAINTIFF Pinder is, and at all time relevant to this action was, a glamour model, actress, host, and a businesswoman.

245.    Pinder has been featured in publications such as *FHM* and *The Daily Star* and was one of *FHM*'s "100 Sexiest Women in the Word" from 2005 through 2007.

246.    Pinder has collaborated with major brands such as Unilever, Camelot, and other on large national and international advertising campaigns.

247.    Pinder also is an established actress with television and film credits including *I'm Famous and Frightened, Socc AM, Weakest Link, Nuts TV, MTV's TMF, Hotel Babylon, and Team and Bo!*.  Pinder was also a contestant on *Celebrity Big Brother*.

248.    Pinder has had starring roles in *The Seventeenth Kind, Age of Kill*, and *Warrior Savitri*.

249.    Pinder has also worked with *Help for Heroes*, appearing in the *Hot Shots* fund raising calendar, supported male cancer awareness campaigns, taking part in the MCAC London Strut awareness initiative, and visited American troops in Afghanistan in 2007.

250.    Pinder is an elite social media influencer with almost 1.5 million Instagram followers and 500,000 Twitter followers.

251.    In all instances of commercial marketing and promotion of her image,

likeness and/or identity by third parties, Pinder negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

252.   DEFENDANT Bella's Cabaret used a stolen image of PLAINTIFF Pinder to entice the public to visit their strip club. In February of 2016, Pinder's image appeared on Bella's Cabaret's Twitter page. Pinder appears as the model on the left hand side of the advertisement. The image was used to promote Bella's Cabaret's strip club, was used without the consent of Pinder, and was used to intentionally give the impression that Pinder is either a stripper working at the strip club or that she endorses the strip club. *See* image of PLAINTIFF Pinder attached hereto as **Exhibit M** which is incorporated herein by this reference.

253.   Pinder's image, likeness and/or identity in **Exhibit M** is being used by Defendant in various marketing and promotional mediums such as advertising and on social media.

254.   Pinder has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

255.   Pinder has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

256.   Defendant never sought permission or authority to use Pinder's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

257.   Pinder never gave permission, or assigned, licensed or otherwise consented

to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

258.    At all times relevant to this action, Pinder was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

259.    Defendant neither offered nor paid any remuneration to Pinder for the unauthorized use of her image, likeness and/or identity.

260.    Defendant's use of Pinder's image, likeness and/or identity in connection with Defendant's strip club impugns Pinder's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

261.    Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Pinder's image in their market activities and business. In doing so, Defendant has further damaged Pinder.

### Plaintiff Paola Cañas

262.    PLAINTIFF Cañas is, and at all times relevant to this matter was, a Colombian born model now residing and working in the United States.

263.    Cañas has worked for over twelve years as a model, host, runway model, and actor.

264.    She has worked runway shows in Colombia, Mexica, Ecuador, and Paris, France.

265.    Cañas is a contracted model for international campaigns for Curve and their worldwide lingerie line.

266.    Cañas was also the face of the Masters Gold Tournament in Dubai, United Arab Emirates and was the image for the "International Surf and Sport Expo" in Orlando, Florida.

267.    She has worked for international brands and labels such as SOHO, Kiss underwear, Salon International, Zona Rosa, and Esteban Escobar.

268.    Cañas has also appeared in numerous television shows like *Fox Sports* and on television networks such as Telemundo and TV Azteca.

269.    Cañas is a social media influencer with over 354,000 Instagram followers.

270.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Cañas negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

271.    DEFENDANT Bella's Cabaret used stolen images of Plaintiff Cañas to entice the public to visit their strip club.  In December 2015, Bella's Cabaret posted three images of Cañas on their Twitter page to advertise their strip club, insinuating that Cañas is a stripper working at Bella's Cabaret.  The images were used without the consent of Cañas and were used to intentionally give the impression that Cañas is either a stripper working at the strip club or that she endorses Bella's Cabaret.  *See* images of PLAINTIFF Cañas attached hereto as **Exhibit N** which is incorporated herein by this reference.

272.    Cañas' image, likeness and/or identity in **Exhibit N** is being used by Defendant in various marketing and promotional mediums such as advertising and on social media.

273.    Cañas has never been employed by Defendant or contracted with Defendant

to participate in events at Defendant's strip club.

274.    Cañas has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

275.    Defendant never sought permission or authority to use Cañas' image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

276.    Cañas never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

277.    At all times relevant to this action, Cañas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

278.    Defendant neither offered nor paid any remuneration to Cañas for the unauthorized use of her image, likeness and/or identity.

279.    Defendant's use of Cañas' image, likeness and/or identity in connection with Defendant's strip club impugns Cañas' character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

280.    Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Cañas' image in their market activities and business. In doing so, Defendant have further damaged Cañas.

### *Plaintiff Sara Underwood*

281. Underwood is, and at all times relevant to this action was, a model, actress, and spokesmodel.

282. Underwood was *Playboy* "Playmate of the Year" in 2007. Underwood has also been featured in many *Playboy* videos and has appeared as herself in films *The House Bunny* (2008) and *Miss March* (2009), and episodes of reality TV series such as *Kendra* (2009), *The Girls Next Door* (2005) and *Bridget's Sexiest Beaches* (2009).

283. Underwood has also worked on television as continuity announcer for the Blackbelt TV cable network and co-hosted five episodes of G4's "*Attack of the Show*" (2003).

284. Underwood has a following on Instagram of 8.3 million followers, 599,500 Twitter followers, as well as over 4.9 million likes on Facebook

285. In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Underwood negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation

286. DEFENDANT Bella's Cabaret used a stolen image of Plaintiff Underwood to entice the public to visit their strip club. On September 18, 2014, Xcitement Magazine posted an image of Underwood on their Facebook page as part of an advertisement for Bella's Cabaret, insinuating that Underwood is a stripper working at Bella's Cabaret. The image was part of an advertisement for a "back to school" party and included the caption "Saturday Night its Bella's Back to School party. It's time for the schoolgirls! – at Bellas Cabaret," insinuating that Underwood was a stripper that could be seen by the public during the back to school party at Bella's Cabaret. The image was used without the consent of

Underwood and used to intentionally give the impression that Underwood is either a stripper working at the strip club or that she endorses Bella's Cabaret.  Prior to that, on August 26, 2014, Bella's Cabaret also posted a stolen image of Underwood to its Facebook page to advertise a back to school party on September 20, 2014. The image was used without the consent of Underwood and used to intentionally give the impression that Underwood is either a stripper working at the strip club or that she endorses Bella's Cabaret.  *See* images of PLAINTIFF Underwood attached hereto as **Exhibit O** which is incorporated herein by this reference.

287.    Underwood's image, likeness and/or identity in **Exhibit O** is being used by Defendant in various marketing and promotional mediums such as advertising and on social media.

288.    Underwood has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

289.    Underwood has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

290.    Defendant never sought permission or authority to use Underwood's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

291.    Underwood never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

292.    At all times relevant to this action, Underwood was and is the exclusive

owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

293.    Defendant neither offered nor paid any remuneration to Underwood for the unauthorized use of her image, likeness and/or identity.

294.    Defendant's use of Underwood's image, likeness and/or identity in connection with Defendant's strip club impugns Underwood's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

295.    Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Underwood's image in their market activities and business. In doing so, Defendant have further damaged Underwood.

### Plaintiff Tiffany Toth Gray

296.    Plaintiff Gray is, and all times relevant to this matter was, a model and actress.

297.    Toth was *Playboy*'s Miss September 2011 and has appeared in multiple Playboy television and movie productions.

298.    Toth has also appeared on *Jimmy Kimmel Live!, Tosh.O,* and *Dog Whisperer with Cesar Milan*.

299.    Toth has 212,000 followers on Twitter, more than 3.7 million followers and 3.9 million likes on Facebook, and 1.1 Instagram followers.

300.    In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Gray negotiated and expressly granted authority for

such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation

301.    DEFENDANT Bella's Cabaret used stolen images of Plaintiff Gray to entice the public to visit their strip club.  In February of 2016, Bella's Cabaret posted two image of Gray on their Twitter page as part of an advertisement for Bella's Cabaret, insinuating that Gray is a stripper working at Bella's Cabaret.  The images were used without the consent of Gray and used to intentionally give the impression that Gray is either a stripper working at the strip club or that she endorses Bella's Cabaret.  *See* images of PLAINTIFF Gray attached hereto as **Exhibit P** which is incorporated herein by this reference.

302.    Gray's image, likeness and/or identity in **Exhibit P** is being used by Defendant in various marketing and promotional mediums such as advertising and on social media.

303.    Gray has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

304.    Gray has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

305.    Defendant never sought permission or authority to use Gray's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

306.    Gray never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

307.    At all times relevant to this action, Gray was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

308.    Defendant neither offered nor paid any remuneration to Gray for the unauthorized use of her image, likeness and/or identity.

309.    Defendant's use of Gray's image, likeness and/or identity in connection with Defendant's strip club impugns Gray's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

310.    Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Gray's image in their market activities and business. In doing so, Defendant have further damaged Gray.

### Plaintiff Tyran Makelle Richard

311.    Plaintiff Richard is, and at all times relevant to this matter was, a professional model.

312.    Richard was *Playboy*'s Miss March 2007 and appeared in other Playboy television shows and media.

313.    Richard also appeared in modeling campaigns for Shirly of Hollywood's lingerie collection.

314.    Richard previously co-hosted the television game show *Sports Trivia Challenge*, appeared in *Sons of Guns* on the Discovery Channel, and had a feature role in the film *Never Back Down*.

315.    In all instances of commercial marketing and promotion of her image,

likeness, or identity by third parties, Richard negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation

316.    DEFENDANT Bella's Cabaret used a stolen image of Plaintiff Richard to entice the public to visit their strip club.  In December of 2015, Bella's Cabaret posted an image of Richard on their Twitter page as part of an advertisement for Bella's Cabaret, insinuating that Richard is a stripper working at Bella's Cabaret.  The image was used without the consent of Richard and used to intentionally give the impression that Richard is either a stripper working at the strip club or that she endorses Bella's Cabaret. *See* images of PLAINTIFF Richard attached hereto as **Exhibit Q** which is incorporated herein by this reference.

317.    Richard's image, likeness and/or identity in **Exhibit Q** is being used by Defendant in various marketing and promotional mediums such as advertising and on social media.

318.    Richard has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

319.    Richard has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

320.    Defendant never sought permission or authority to use Richard's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events.

321.    Richard never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote,

market or endorse Defendant's businesses or any of Defendant's events.

322.    At all times relevant to this action, Richard was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

323.    Defendant neither offered nor paid any remuneration to Richard for the unauthorized use of her image, likeness and/or identity.

324.    Defendant's use of Richard's image, likeness and/or identity in connection with Defendant's strip club impugns Richard's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

325.    Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Richard's image in their market activities and business. In doing so, Defendant have further damaged Richard.

## CAUSES OF ACTION

### *Plaintiff Amy Dginguerian a/k/a Amy Weber's Causes of Action*

### WEBER COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against Defendant)

343.    Plaintiff Weber re-alleges paragraphs 1 through 16, 33 through 35, 39 through 49, and 50 through 65 above, and incorporates the same by reference as though fully set forth herein.

344.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Weber from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the

nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

345.   At all times relevant to this action, Weber was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

346.   Defendant used Weber's images, likeness and/or identity as described herein without authority to create the perception that Weber worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her images to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

347.   Defendant's use of Weber's images, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

348.   Defendant's unauthorized use of Weber's images, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Weber worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Weber would participate in or appear at the specific events promoted in the advertisements.

349.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events,

as well as specifically whether Weber worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

350.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Weber worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events and activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

351.    Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

352.    Defendant's unauthorized use of Weber's images, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among

other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

353.    Defendant knew or should have known that their unauthorized use of Weber's images, likeness and/or identity would cause consumer confusion as described in this Complaint.

354.    Defendant's unauthorized use of Weber's images, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

355.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

356.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Weber of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Weber.

357.    The method and manner in which Defendant used the images of Weber further evinces that Defendant were aware of or consciously disregarded the fact that Weber did not consent to Defendant's use of the images to advertise Defendant's businesses.

358.    Defendant has caused irreparable harm to Weber, her reputation and brand by attributing to Weber the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

359.    Defendant's unauthorized use of Weber's images, likeness and/or identity directly and proximately caused and continue to cause damage to Weber in an amount to be determined at trial.

**WHEREFORE**, Weber respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**WEBER COUNT II**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Endorsement against Defendant)**

360.    Plaintiff Weber re-alleges paragraphs 1 through 16, 33 through 35, 39 through 49, and 50 through 65 above, and incorporates the same by reference as though fully set forth herein.

361.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Weber from the conduct described herein.

362.    Defendant used Weber's images to create the false impression with the public that Weber either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

363.    Thus, this was done in furtherance of Defendant's commercial benefit.

364.    Weber is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Weber's images in magazines and online.

365.    Both Weber and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

366. As such, an unauthorized use of Weber's images to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Weber.

367. Defendant's use of Weber's images, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Weber's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Weber, or sponsored, approved or associated with Weber.

368. Despite the fact that Defendant were at all times aware that Weber neither worked at, nor endorsed their strip club, nevertheless, they used Weber's images to mislead potential customers as to Weber's employment at and/or affiliation with Defendant.

369. Defendant knew that their use of Weber's images would cause consumer confusion as to Weber's sponsorship and/or employment at Defendant's strip club.

370. Upon information and belief, Defendant's use of Weber's images did in fact cause consumer confusion as to Weber's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

371. As a direct and proximate result of Defendant's actions, Weber has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Weber's images, likeness and/or identity, or how Weber's image, likeness and/or identity is being depicted by Defendant.

372. Further, any failure, neglect or default by Defendant will reflect adversely on Weber as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Weber to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures

to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Weber.

373.    Due to Defendant's unauthorized use of Weber's image, Weber has been damaged in an amount to be determined at trial.

**WHEREFORE**, Weber respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## WEBER COUNT III
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against Defendant)

374.    Plaintiff Weber re-alleges paragraphs 1 through 16, 33 through 35, 39 through 49, and 50 through 65 above, and incorporates the same by reference as though fully set forth herein.

375.    Weber has a statutory right of publicity under Section 540.08, Florida Statutes.

376.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

377.    Despite the clear language of Section 540.08, Defendant published Weber's images, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

378.   At all times relevant to this action, Weber was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

379.   Defendant never sought permission or authority to use Weber's images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

380.   Weber never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

381.   Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Weber's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

382.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Weber of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Weber.

383.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Weber's rights.

384.   Alternatively, Defendant acted negligently towards Weber in using and disseminating, without authority, her images, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

385.    Defendant has caused irreparable harm to Weber, her reputation and brand by attributing to Weber the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

386.    Defendant has also damaged Weber as a direct and proximate result of their unauthorized use of Weber's images, likeness and/or identity without compensating Weber.   Defendant's conduct has been despicable and taken in conscious disregard of Weber's rights. Accordingly, Weber is entitled to an award of punitive damages against Defendant in an amount sufficient to punish and make an example of Defendant. Therefore, Weber reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Weber respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

**<ins>WEBER COUNT IV</ins>**
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against Defendant)**

387.    Plaintiff Weber re-alleges paragraphs 1 through 16, 33 through 35, 39 through 49, and 50 through 65 above, and incorporates the same by reference as though fully set forth herein.

388.    Weber has a common law right of publicity.

389.    Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other

likeness of Weber without express written or oral consent to such use.

390.    At all times relevant to this action, Weber was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

391.    Defendant published, printed, displayed and/or publicly used Weber's images, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

392.    Defendant took these actions without Weber's permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Weber's images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

393.    Weber never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

394.    Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Weber's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

395.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Weber of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Weber.

396.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Weber's rights.

397.    Alternatively, Defendant acted negligently towards Weber in using and disseminating, without authority, her images, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

398.    Defendant has caused irreparable harm to Weber, her reputation and brand by attributing to Weber the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

399.    Defendant has also damaged Weber as a direct and proximate result of their unauthorized use of Weber's images, likeness and/or identity without compensating Weber.

**WHEREFORE**, Weber respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## <u>WEBER COUNT V</u>
**(Conversion against Defendant)**

400.    Plaintiff Weber re-alleges paragraphs 1 through 16, 33 through 35, 39 through 49, and 50 through 65 above, and incorporates the same by reference as though fully set forth herein.

401.    Weber is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant

for Defendant's benefit.

402.    Weber has, and at all times relevant herein had, an intangible property interest in her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

403.    By their acts and conduct alleged above, Defendant has converted Weber's property rights, including without limitation, Weber's images, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

404.    Weber is informed and believes and on such information alleges that Defendant has refused to return Weber's property to her or pay for the deprivation of Weber's property.

405.    As a result, Weber has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Weber alleges that the same are within the jurisdiction of the Court.

406.    Further, Weber is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Weber's rights.

**WHEREFORE**, Weber respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

## WEBER COUNT VI
### (Unjust Enrichment against Defendant)

407.    Plaintiff Weber re-alleges paragraphs 1 through 16, 33 through 35, 39 through 49, and 50 through 65 above, and incorporates the same by reference as though fully set forth herein.

408.    Weber has conferred a benefit upon Defendant by virtue of Defendant's usage of her images without compensation.

409.    At all times relevant to this action, Weber was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

410.    Defendant were aware that Weber's images, likeness and/or identity were valuable.

411.    Defendant were aware of the resulting benefit from usage of Weber's images, likeness and/or identity.

412.    Defendant has retained profits and other benefits conferred upon them by using Weber's images, likeness and/or identity to promote and advertise Defendant's businesses and/or Defendant's events and activities.

It would be inequitable for Defendant to retain the benefits conferred upon them by using Weber's images, likeness and/or identity without paying fair value for the images.

**WHEREFORE**, Weber respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and

proper.

*Plaintiff Arianny Celeste Lopez's Causes of Action*

**LOPEZ COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against Defendant)**

413.    Plaintiff Lopez re-alleges paragraphs 1 through 15, 17, 33 through 35, 39 through 49, and 66 through 81 above, and incorporates the same by reference as though fully set forth herein.

414.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Lopez from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

415.    At all times relevant to this action, Lopez was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

416.    Defendant used Lopez's images, likeness and/or identity as described herein without authority to create the perception that Lopez worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her images to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

417.    Defendant's use of Lopez's images, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

418.    Defendant's unauthorized use of Lopez's images, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Lopez worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Lopez would participate in or appear at the specific events promoted in the advertisements.

419.    Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Lopez worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

420.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Lopez worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events and activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to

join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

421.    Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

422.    Defendant's unauthorized use of Lopez's images, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

423.    Defendant knew or should have known that their unauthorized use of Lopez's images, likeness and/or identity would cause consumer confusion as described in this Complaint.

424.    Defendant's unauthorized use of Lopez's images, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

425.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

426.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Lopez of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Lopez.

427.    The method and manner in which Defendant used the images of Lopez further evinces that Defendant were aware of or consciously disregarded the fact that Lopez did not consent to Defendant's use of the images to advertise Defendant's businesses.

428.    Defendant has caused irreparable harm to Lopez, her reputation and brand by attributing to Lopez the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

429.    Defendant's unauthorized use of Lopez's images, likeness and/or identity directly and proximately caused and continue to cause damage to Lopez in an amount to be determined at trial.

**WHEREFORE**, Lopez respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**LOPEZ COUNT II**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Endorsement against Defendant)**

430.    Plaintiff Lopez re-alleges paragraphs 1 through 15, 17, 33 through 35, 39 through 49, and 66 through 81 above, and incorporates the same by reference as though fully set forth herein.

431.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Lopez from the conduct described herein.

432.    Defendant used Lopez's images to create the false impression with the public that Lopez either worked at Defendant's strip club, or endorsed Defendant's

businesses. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

433.    Thus, this was done in furtherance of Defendant's commercial benefit.

434.    Lopez is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Lopez's images in magazines and online.

435.    Both Lopez and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

436.    As such, an unauthorized use of Lopez's images to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Lopez.

437.    Defendant's use of Lopez's images, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Lopez's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Lopez, or sponsored, approved or associated with Lopez.

438.    Despite the fact that Defendant were at all times aware that Lopez neither worked at, nor endorsed their strip club, nevertheless, they used Lopez's images to mislead potential customers as to Lopez's employment at and/or affiliation with Defendant.

439.    Defendant knew that their use of Lopez's images would cause consumer confusion as to Lopez's sponsorship and/or employment at Defendant's strip club.

440.    Upon information and belief, Defendant's use of Lopez's images did in fact cause consumer confusion as to Lopez's employment at and/or endorsement of

Defendant's businesses, and the goods and services provided by Defendant.

441.    As a direct and proximate result of Defendant's actions, Lopez has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Lopez's images, likeness and/or identity, or how Lopez's image, likeness and/or identity is being depicted by Defendant.

442.    Further, any failure, neglect or default by Defendant will reflect adversely on Lopez as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Lopez to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Lopez.

443.    Due to Defendant's unauthorized use of Lopez's image, Lopez has been damaged in an amount to be determined at trial.

**WHEREFORE**, Lopez respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### <u>LOPEZ COUNT III</u>
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against Defendant)**

444.    Plaintiff Lopez re-alleges paragraphs 1 through 15, 17, 33 through 35, 39 through 49, and 66 through 81 above, and incorporates the same by reference as though fully set forth herein.

445.    Lopez has a statutory right of publicity under Section 540.08, Florida Statutes.

446.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

447.    Despite the clear language of Section 540.08, Defendant published Lopez's images, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

448.    At all times relevant to this action, Lopez was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

449.    Defendant never sought permission or authority to use Lopez's images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

450.    Lopez never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

451.    Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Lopez's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

452.    Defendant had actual or constructive knowledge or consciously disregarded

the wrongfulness of their conduct, deprived Lopez of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Lopez.

453.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Lopez's rights.

454.    Alternatively, Defendant acted negligently towards Lopez in using and disseminating, without authority, her images, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

455.    Defendant has caused irreparable harm to Lopez, her reputation and brand by attributing to Lopez the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

456.    Defendant has also damaged Lopez as a direct and proximate result of their unauthorized use of Lopez's images, likeness and/or identity without compensating Lopez. Defendant's conduct has been despicable and taken in conscious disregard of Lopez's rights.

**WHEREFORE**, Lopez respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## **LOPEZ COUNT IV**

**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against Defendant)**

457.    Plaintiff Lopez re-alleges paragraphs 1 through 15, 17, 33 through 35, 39 through 49, and 66 through 81 above, and incorporates the same by reference as though fully set forth herein.

458.    Lopez has a common law right of publicity.

459.    Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Lopez without express written or oral consent to such use.

460.    At all times relevant to this action, Lopez was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

461.    Defendant published, printed, displayed and/or publicly used Lopez's images, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

462.    Defendant took these actions without Lopez's permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Lopez's images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

463.    Lopez never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

464.    Defendant intentionally or, at a minimum, recklessly, published, printed,

displayed, or otherwise publicly disseminated or used Lopez's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

465.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Lopez of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Lopez.

466.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Lopez's rights.

467.    Alternatively, Defendant acted negligently towards Lopez in using and disseminating, without authority, her images, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

468.    Defendant has caused irreparable harm to Lopez, her reputation and brand by attributing to Lopez the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

469.    Defendant has also damaged Lopez as a direct and proximate result of their unauthorized use of Lopez's images, likeness and/or identity without compensating Lopez.

**WHEREFORE**, Lopez respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## LOPEZ COUNT V
### (Conversion against Defendant)

470.    Plaintiff Lopez re-alleges paragraphs 1 through 15, 17, 33 through 35, 39 through 49, and 66 through 81 above, and incorporates the same by reference as though fully set forth herein.

471.    Lopez is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

472.    Lopez has, and at all times relevant herein had, an intangible property interest in her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

473.    By their acts and conduct alleged above, Defendant has converted Lopez's property rights, including without limitation, Lopez's images, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

474.    Lopez is informed and believes and on such information alleges that Defendant has refused to return Lopez's property to her or pay for the deprivation of Lopez's property.

475.    As a result, Lopez has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Lopez alleges that the same are within the jurisdiction of the Court.

476.    Further, Lopez is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Lopez's rights.

**WHEREFORE**, Lopez respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

**LOPEZ COUNT VI**
**(Unjust Enrichment against Defendant)**

477.    Plaintiff Lopez re-alleges paragraphs 1 through 15, 17, 33 through 35, 39 through 49, and 66 through 81 above, and incorporates the same by reference as though fully set forth herein.

478.    Lopez has conferred a benefit upon Defendant by virtue of Defendant's usage of her images without compensation.

479.    At all times relevant to this action, Lopez was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

480.    Defendant were aware that Lopez's images, likeness and/or identity were valuable.

481.    Defendant were aware of the resulting benefit from usage of Lopez's images, likeness and/or identity.

482.    Defendant has retained profits and other benefits conferred upon them by using Lopez's images, likeness and/or identity to promote and advertise Defendant's businesses and/or Defendant's events and activities.

483.    It would be inequitable for Defendant to retain the benefits conferred upon them by using Lopez's images, likeness and/or identity without paying fair value for the

images.

**WHEREFORE**, Lopez respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Tara Leigh Patrick a/k/a Carmen Electra's Causes of Action*

**ELECTRA COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against Defendant)**

484.    Plaintiff Electra re-alleges paragraphs 1 through 15, 18, 33 through 35, 39 through 49, and 97 through 119 above, and incorporates the same by reference as though fully set forth herein.

485.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Electra from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

486.    At all times relevant to this action, Electra was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

487.    Defendant used Electra's images, likeness and/or identity as described herein without authority to create the perception that Electra worked at or was otherwise

affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her images to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

488.    Defendant's use of Electra's images, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

489.    Defendant's unauthorized use of Electra's images, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Electra worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Electra would participate in or appear at the specific events promoted in the advertisements.

490.    Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Electra worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

491.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Electra worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's

events and activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

492.    Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

493.    Defendant's unauthorized use of Electra's images, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

494.    Defendant knew or should have known that their unauthorized use of Electra's images, likeness and/or identity would cause consumer confusion as described in this Complaint.

495.    Defendant's unauthorized use of Electra's images, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

496.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

497.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Electra of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Electra.

498.    The method and manner in which Defendant used the images of Electra further evinces that Defendant were aware of or consciously disregarded the fact that Electra did not consent to Defendant's use of the images to advertise Defendant's businesses.

499.    Defendant has caused irreparable harm to Electra, her reputation and brand by attributing to Electra the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

500.    Defendant's unauthorized use of Electra's images, likeness and/or identity directly and proximately caused and continue to cause damage to Electra in an amount to be determined at trial.

**WHEREFORE**, Electra respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**ELECTRA COUNT II**</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Endorsement against Defendant**)

501.    Plaintiff Electra re-alleges paragraphs 1 through 15, 18, 33 through 35, 39 through 49, and 97 through 119 above, and incorporates the same by reference as though fully set forth herein.

502.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Electra from the conduct described herein.

503.    Defendant used Electra's images to create the false impression with the public that Electra either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

504.    Thus, this was done in furtherance of Defendant's commercial benefit.

505.    Electra is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Electra's images in magazines and online.

506.    Both Electra and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

507.    As such, an unauthorized use of Electra's images to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Electra.

508.    Defendant's use of Electra's images, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Electra's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Electra, or sponsored, approved or associated with

Electra.

509.    Despite the fact that Defendant were at all times aware that Electra neither worked at, nor endorsed their strip club, nevertheless, they used Electra's images to mislead potential customers as to Electra's employment at and/or affiliation with Defendant.

510.    Defendant knew that their use of Electra's images would cause consumer confusion as to Electra's sponsorship and/or employment at Defendant's strip club.

511.    Upon information and belief, Defendant's use of Electra's images did in fact cause consumer confusion as to Electra's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

512.    As a direct and proximate result of Defendant's actions, Electra has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Electra's images, likeness and/or identity, or how Electra's image, likeness and/or identity is being depicted by Defendant.

513.    Further, any failure, neglect or default by Defendant will reflect adversely on Electra as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Electra to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Electra.

514.    Due to Defendant's unauthorized use of Electra's image, Electra has been damaged in an amount to be determined at trial.

**WHEREFORE**, Electra respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be

determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### ELECTRA COUNT III
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against Defendant)**

515.    Plaintiff Electra re-alleges paragraphs 1 through 15, 18, 33 through 35, 39 through 49, and 97 through 119 above, and incorporates the same by reference as though fully set forth herein.

516.    Electra has a statutory right of publicity under Section 540.08, Florida Statutes.

517.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

518.    Despite the clear language of Section 540.08, Defendant published Electra's images, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

519.    At all times relevant to this action, Electra was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

520.    Defendant never sought permission or authority to use Electra's images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

521.    Electra never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

522.    Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Electra's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

523.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Electra of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Electra.

524.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Electra's rights.

525.    Alternatively, Defendant acted negligently towards Electra in using and disseminating, without authority, her images, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

526.    Defendant has caused irreparable harm to Electra, her reputation and brand by attributing to Electra the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

527.    Defendant has also damaged Electra as a direct and proximate result of their unauthorized use of Electra's images, likeness and/or identity without compensating Electra. Defendant's conduct has been despicable and taken in conscious disregard of

Electra's rights.

**WHEREFORE**, Electra respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

**ELECTRA COUNT IV**
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against Defendant)**

528.    Plaintiff Electra re-alleges paragraphs 1 through 15, 18, 33 through 35, 39 through 49, and 97 through 119 above, and incorporates the same by reference as though fully set forth herein.

529.    Electra has a common law right of publicity.

530.    Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Electra without express written or oral consent to such use.

531.    At all times relevant to this action, Electra was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

532.    Defendant published, printed, displayed and/or publicly used Electra's images, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

533.    Defendant took these actions without Electra's permission, consent or

authority. In fact, Defendant never sought permission nor authority to use Electra's images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

534. Electra never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

535. Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Electra's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

536. Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Electra of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Electra.

537. At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Electra's rights.

538. Alternatively, Defendant acted negligently towards Electra in using and disseminating, without authority, her images, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

539. Defendant has caused irreparable harm to Electra, her reputation and brand by attributing to Electra the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

540.    Defendant has also damaged Electra as a direct and proximate result of their unauthorized use of Electra's images, likeness and/or identity without compensating Electra.

**WHEREFORE**, Electra respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## ELECTRA COUNT V
### (Conversion against Defendant)

541.    Plaintiff Electra re-alleges paragraphs 1 through 15, 18, 33 through 35, 39 through 49, and 97 through 119 above, and incorporates the same by reference as though fully set forth herein.

542.    Electra is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

543.    Electra has, and at all times relevant herein had, an intangible property interest in her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

544.    By their acts and conduct alleged above, Defendant has converted Electra's property rights, including without limitation, Electra's images, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

545.    Electra is informed and believes and on such information alleges that Defendant has refused to return Electra's property to her or pay for the deprivation of

Electra's property.

546.    As a result, Electra has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Electra alleges that the same are within the jurisdiction of the Court.

547.    Further, Electra is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Electra's rights.

**WHEREFORE**, Electra respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

## ELECTRA COUNT VI
### (Unjust Enrichment against Defendant)

548.    Plaintiff Electra re-alleges paragraphs 1 through 15, 18, 33 through 35, 39 through 49, and 97 through 119 above, and incorporates the same by reference as though fully set forth herein.

549.    Electra has conferred a benefit upon Defendant by virtue of Defendant's usage of her images without compensation.

550.    At all times relevant to this action, Electra was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

551.    Defendant were aware that Electra's images, likeness and/or identity were

valuable.

552.     Defendant were aware of the resulting benefit from usage of Electra's images, likeness and/or identity.

553.     Defendant has retained profits and other benefits conferred upon them by using Electra's images, likeness and/or identity to promote and advertise Defendant's businesses and/or Defendant's events and activities.

554.     It would be inequitable for Defendant to retain the benefits conferred upon them by using Electra's images, likeness and/or identity without paying fair value for the images.

**WHEREFORE**, Electra respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Camila Davalos' Causes of Action*

### DAVALOS COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against Defendant)

555.     Plaintiff Davalos re-alleges paragraphs 1 through 15, 19, 33 through 35, 39 through 49, and 82 through 96 above, and incorporates the same by reference as though fully set forth herein.

556.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Davalos from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from

"misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

557.   At all times relevant to this action, Davalos was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

558.   Defendant used Davalos' image, likeness and/or identity as described herein without authority to create the perception that Davalos worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

559.   Defendant's use of Davalos' image, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

560.   Defendant's unauthorized use of Davalos' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Davalos worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Davalos would participate in or appear at the specific events promoted in the advertisements.

561.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the

general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Davalos worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

562.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Davalos worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

563.   Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

564.   Defendant's unauthorized use of Davalos' image, likeness and/or identity

as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

565.   Defendant knew or should have known that their unauthorized use of Davalos' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

566.   Defendant's unauthorized use of Davalos' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

567.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

568.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Davalos of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Davalos.

569.   The method and manner in which Defendant used the image of Davalos further evinces that Defendant were aware of or consciously disregarded the fact that Davalos did not consent to Defendant's use of the image to advertise Defendant's businesses.

570.   Defendant has caused irreparable harm to Davalos, her reputation and brand by attributing to Davalos the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

571.   Defendant's unauthorized use of Davalos' image, likeness and/or identity directly and proximately caused and continue to cause damage to Davalos in an amount to

be determined at trial.

**WHEREFORE**, Davalos respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**DAVALOS COUNT II**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Endorsement against Defendant)**

572.    Plaintiff Davalos re-alleges paragraphs 1 through 15, 19, 33 through 35, 39 through 49, and 82 through 96 above, and incorporates the same by reference as though fully set forth herein.

573.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Davalos from the conduct described herein.

574.    Defendant used Davalos' image to create the false impression with the public that Davalos either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

575.    Thus, this was done in furtherance of Defendant's commercial benefit.

576.    Davalos is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Davalos' images in magazines and online.

577.    Both Davalos and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie

for the same dollars from the same demographic consumer group of men.

578.    As such, an unauthorized use of Davalos' image to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Davalos.

579.    Defendant's use of Davalos' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Davalos' fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Davalos, or sponsored, approved or associated with Davalos.

580.    Despite the fact that Defendant were at all times aware that Davalos neither worked at, nor endorsed their strip club, nevertheless, they used Davalos' image to mislead potential customers as to Davalos' employment at and/or affiliation with Defendant.

581.    Defendant knew that their use of Davalos' image would cause consumer confusion as to Davalos' sponsorship and/or employment at Defendant's strip club.

582.    Upon information and belief, Defendant's use of Davalos' image did in fact cause consumer confusion as to Davalos' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

583.    As a direct and proximate result of Defendant's actions, Davalos has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Davalos' image, likeness and/or identity, or how Davalos' image, likeness and/or identity is being depicted by Defendant.

584.    Further, any failure, neglect or default by Defendant will reflect adversely on Davalos as the believed source of origin, sponsorship, approval or association thereof,

hampering efforts by Davalos to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Davalos.

585.    Due to Defendant's unauthorized use of Davalos' image, Davalos has been damaged in an amount to be determined at trial.

**WHEREFORE**, Davalos respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### DAVALOS COUNT III
### (Violation of Fla. Stat. § 540.08: Right of Publicity; Unauthorized Misappropriation of Name/Likeness against Defendant)

586.    Plaintiff Davalos re-alleges paragraphs 1 through 15, 19, 33 through 35, 39 through 49, and 82 through 96 above, and incorporates the same by reference as though fully set forth herein.

587.    Davalos has a statutory right of publicity under Section 540.08, Florida Statutes.

588.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

589.    Despite the clear language of Section 540.08, Defendant published

Davalos' image, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

590.    At all times relevant to this action, Davalos was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

591.    Defendant never sought permission or authority to use Davalos' image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

592.    Davalos never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

593.    Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Davalos' image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

594.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Davalos of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Davalos.

595.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Davalos' rights.

596.    Alternatively, Defendant acted negligently towards Davalos in using and disseminating, without authority, her image, likeness and/or identity on social media

outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

597.    Defendant has caused irreparable harm to Davalos, her reputation and brand by attributing to Davalos the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

598.    Defendant has also damaged Davalos as a direct and proximate result of their unauthorized use of Davalos' image, likeness and/or identity without compensating Davalos. Defendant's conduct has been despicable and taken in conscious disregard of Davalos' rights.

**WHEREFORE**, Davalos respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, punitive damages according to proof, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**DAVALOS COUNT IV**</u>
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against Defendant)**

599.    Plaintiff Davalos re-alleges paragraphs 1 through 15, 19, 33 through 35, 39 through 49, and 82 through 96 above, and incorporates the same by reference as though fully set forth herein.

600.    Davalos has a common law right of publicity.

601.    Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Davalos without express written or oral consent to such use.

602.    At all times relevant to this action, Davalos was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

603.    Defendant published, printed, displayed and/or publicly used Davalos' image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

604.    Defendant took these actions without Davalos' permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Davalos' image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

605.    Davalos never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

606.    Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Davalos' image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

607.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Davalos of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Davalos.

608.    At a minimum, Defendant's conduct was so reckless or wanton in care that

it constituted a conscious disregard of or indifference to Davalos' rights.

609.    Alternatively, Defendant acted negligently towards Davalos in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

610.    Defendant has caused irreparable harm to Davalos, her reputation and brand by attributing to Davalos the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

611.    Defendant has also damaged Davalos as a direct and proximate result of their unauthorized use of Davalos' image, likeness and/or identity without compensating Davalos.

**WHEREFORE**, Davalos respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## DAVALOS COUNT V
**(Conversion against Defendant)**

612.    Plaintiff Davalos re-alleges paragraphs 1 through 15, 19, 33 through 35, 39 through 49, and 82 through 96 above, and incorporates the same by reference as though fully set forth herein.

613.    Davalos is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

614.     Davalos has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

615.     By their acts and conduct alleged above, Defendant has converted Davalos' property rights, including without limitation, Davalos' image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

616.     Davalos is informed and believes and on such information alleges that Defendant has refused to return Davalos' property to her or pay for the deprivation of Davalos' property.

617.     As a result, Davalos has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Davalos alleges that the same are within the jurisdiction of the Court.

618.     Further, Davalos is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Davalos' rights.

**WHEREFORE**, Davalos respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

## DAVALOS COUNT VI
### (Unjust Enrichment against Defendant)

619.     Plaintiff Davalos re-alleges paragraphs 1 through 15, 19, 33 through 35, 39

through 49, and 82 through 96 above, and incorporates the same by reference as though fully set forth herein.

620.    Davalos has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

621.    At all times relevant to this action, Davalos was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

622.    Defendant were aware that Davalos' image, likeness and/or identity were valuable.

623.    Defendant were aware of the resulting benefit from usage of Davalos' image, likeness and/or identity.

624.    Defendant has retained profits and other benefits conferred upon them by using Davalos' image, likeness and/or identity to promote and advertise Defendant's businesses and/or Defendant's events and activities.

625.    It would be inequitable for Defendant to retain the benefits conferred upon them by using Davalos' image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Davalos respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Cielo Jean Gibson's Causes of Action*

### GIBSON COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against Defendant)

626.    Plaintiff Gibson re-alleges paragraphs 1 through 15, 20, 33 through 35, 39 through 49, and 120 through 136 above, and incorporates the same by reference as though fully set forth herein.

627.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Gibson from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

628.    At all times relevant to this action, Gibson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

629.    Defendant used Gibson' images, likeness and/or identity as described herein without authority to create the perception that Gibson worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her images to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

630.    Defendant's use of Gibson' images, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

631.    Defendant's unauthorized use of Gibson' images, likeness and/or identity

as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Gibson worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Gibson would participate in or appear at the specific events promoted in the advertisements.

632.    Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Gibson worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

633.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Gibson worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events and activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip

club.

634.    Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

635.    Defendant's unauthorized use of Gibson' images, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

636.    Defendant knew or should have known that their unauthorized use of Gibson' images, likeness and/or identity would cause consumer confusion as described in this Complaint.

637.    Defendant's unauthorized use of Gibson' images, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

638.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

639.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Gibson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson.

640.    The method and manner in which Defendant used the images of Gibson

further evinces that Defendant were aware of or consciously disregarded the fact that Gibson did not consent to Defendant's use of the images to advertise Defendant's businesses.

641.   Defendant has caused irreparable harm to Gibson, her reputation and brand by attributing to Gibson the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

642.   Defendant's unauthorized use of Gibson' images, likeness and/or identity directly and proximately caused and continue to cause damage to Gibson in an amount to be determined at trial.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## GIBSON COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement against Defendant)

643.   Plaintiff Gibson re-alleges paragraphs 1 through 15, 20, 33 through 35, 39 through 49, and 120 through 136 above, and incorporates the same by reference as though fully set forth herein.

644.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Gibson from the conduct described herein.

645.   Defendant used Gibson' images to create the false impression with the public that Gibson either worked at Defendant's strip club, or endorsed Defendant's

businesses. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

646.    Thus, this was done in furtherance of Defendant's commercial benefit.

647.    Gibson is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Gibson' images in magazines and online.

648.    Both Gibson and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

649.    As such, an unauthorized use of Gibson' images to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Gibson.

650.    Defendant's use of Gibson' images, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Gibson' fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Gibson, or sponsored, approved or associated with Gibson.

651.    Despite the fact that Defendant were at all times aware that Gibson neither worked at, nor endorsed their strip club, nevertheless, they used Gibson' images to mislead potential customers as to Gibson' employment at and/or affiliation with Defendant.

652.    Defendant knew that their use of Gibson' images would cause consumer confusion as to Gibson' sponsorship and/or employment at Defendant's strip club.

653.    Upon information and belief, Defendant's use of Gibson' images did in fact

cause consumer confusion as to Gibson' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

654.    As a direct and proximate result of Defendant's actions, Gibson has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Gibson' images, likeness and/or identity, or how Gibson' images, likeness and/or identity is being depicted by Defendant.

655.    Further, any failure, neglect or default by Defendant will reflect adversely on Gibson as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Gibson to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Gibson.

656.    Due to Defendant's unauthorized use of Gibson' images, Gibson has been damaged in an amount to be determined at trial.

**WHEREFORE**, Gibson respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**GIBSON COUNT III**</u>
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against Defendant)**

657.    Plaintiff Gibson re-alleges paragraphs 1 through 15, 20, 33 through 35, 39 through 49, and 120 through 136 above, and incorporates the same by reference as though

fully set forth herein.

658.    Gibson has a statutory right of publicity under Section 540.08, Florida Statutes.

659.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

660.    Despite the clear language of Section 540.08, Defendant published Gibson' images, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

661.    At all times relevant to this action, Gibson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

662.    Defendant never sought permission or authority to use Gibson' images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

663.    Gibson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

664.    Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Gibson' images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

665.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Gibson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson.

666.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gibson' rights.

667.    Alternatively, Defendant acted negligently towards Gibson in using and disseminating, without authority, her images, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

668.    Defendant has caused irreparable harm to Gibson, her reputation and brand by attributing to Gibson the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

669.    Defendant has also damaged Gibson as a direct and proximate result of their unauthorized use of Gibson' images, likeness and/or identity without compensating Gibson. Defendant's conduct has been despicable and taken in conscious disregard of Gibson' rights.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## GIBSON COUNT IV

**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against Defendant)**

670.     Plaintiff Gibson re-alleges paragraphs 1 through 15, 20, 33 through 35, 39 through 49, and 120 through 136 above, and incorporates the same by reference as though fully set forth herein.

671.     Gibson has a common law right of publicity.

672.     Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Gibson without express written or oral consent to such use.

673.     At all times relevant to this action, Gibson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

674.     Defendant published, printed, displayed and/or publicly used Gibson' images, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

675.     Defendant took these actions without Gibson' permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Gibson' images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

676.     Gibson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

677.     Defendant intentionally or, at a minimum, recklessly, published, printed,

displayed, or otherwise publicly disseminated or used Gibson' images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

678.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Gibson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson.

679.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gibson' rights.

680.    Alternatively, Defendant acted negligently towards Gibson in using and disseminating, without authority, her images, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

681.    Defendant has caused irreparable harm to Gibson, her reputation and brand by attributing to Gibson the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

682.    Defendant has also damaged Gibson as a direct and proximate result of their unauthorized use of Gibson' images, likeness and/or identity without compensating Gibson.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this

Court.

## GIBSON COUNT V
### (Conversion against Defendant)

683.    Plaintiff Gibson re-alleges paragraphs 1 through 15, 20, 33 through 35, 39 through 49, and 120 through 136 above, and incorporates the same by reference as though fully set forth herein.

684.    Gibson is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

685.    Gibson has, and at all times relevant herein had, an intangible property interest in her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

686.    By their acts and conduct alleged above, Defendant has converted Gibson' property rights, including without limitation, Gibson' images, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

687.    Gibson is informed and believes and on such information alleges that Defendant has refused to return Gibson' property to her or pay for the deprivation of Gibson' property.

688.    As a result, Gibson has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Gibson alleges that the same are within the jurisdiction of the Court.

689.    Further, Gibson is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of

Gibson' rights.

**WHEREFORE**, Gibson respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

<u>**GIBSON COUNT VI**</u>
**(Unjust Enrichment against Defendant)**

690.    Plaintiff Gibson re-alleges paragraphs 1 through 15, 20, 33 through 35, 39 through 49, and 120 through 136 above, and incorporates the same by reference as though fully set forth herein.

691.    Gibson has conferred a benefit upon Defendant by virtue of Defendant's usage of her images without compensation.

692.    At all times relevant to this action, Gibson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

693.    Defendant were aware that Gibson' images, likeness and/or identity were valuable.

694.    Defendant were aware of the resulting benefit from usage of Gibson' images, likeness and/or identity.

695.    Defendant has retained profits and other benefits conferred upon them by using Gibson' images, likeness and/or identity to promote and advertise Defendant's businesses and/or Defendant's events and activities.

696.    It would be inequitable for Defendant to retain the benefits conferred upon

them by using Gibson' images, likeness and/or identity without paying fair value for the images.

**WHEREFORE**, Gibson respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Danielle Ruiz's Causes of Action*

### <u>RUIZ COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against Defendant)**

697.     Plaintiff Ruiz re-alleges paragraphs 1 through 15, 21, 33 through 35, 39 through 49, and 137 through 152 above, and incorporates the same by reference as though fully set forth herein.

698.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Ruiz from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

699.     At all times relevant to this action, Ruiz was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

700.     Defendant used Ruiz's image, likeness and/or identity as described herein without authority to create the perception that Ruiz worked at or was otherwise affiliated

with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

701.    Defendant's use of Ruiz's image, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

702.    Defendant's unauthorized use of Ruiz's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Ruiz worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Ruiz would participate in or appear at the specific events promoted in the advertisements.

703.    Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Ruiz worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

704.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Ruiz worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's

events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

705.    Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

706.    Defendant's unauthorized use of Ruiz's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

707.    Defendant knew or should have known that their unauthorized use of Ruiz's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

708.    Defendant's unauthorized use of Ruiz's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

709.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

710.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Ruiz of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Ruiz.

711.    The method and manner in which Defendant used the image of Ruiz further evinces that Defendant were aware of or consciously disregarded the fact that Ruiz did not consent to Defendant's use of the image to advertise Defendant's businesses.

712.    Defendant has caused irreparable harm to Ruiz, her reputation and brand by attributing to Ruiz the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

713.    Defendant's unauthorized use of Ruiz's image, likeness and/or identity directly and proximately caused and continue to cause damage to Ruiz in an amount to be determined at trial.

**WHEREFORE**, Ruiz respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### RUIZ COUNT II
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Endorsement against Defendant)**

714.    Plaintiff Ruiz re-alleges paragraphs 1 through 15, 21, 33 through 35, 39

through 49, and 137 through 152 above, and incorporates the same by reference as though fully set forth herein.

715.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Ruiz from the conduct described herein.

716.    Defendant used Ruiz's image to create the false impression with the public that Ruiz either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

717.    Thus, this was done in furtherance of Defendant's commercial benefit.

718.    Ruiz is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Ruiz's images in magazines and online.

719.    Both Ruiz and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

720.    As such, an unauthorized use of Ruiz's image to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Ruiz.

721.    Defendant's use of Ruiz's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Ruiz's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Ruiz, or sponsored, approved or associated with Ruiz.

722.    Despite the fact that Defendant were at all times aware that Ruiz neither

worked at, nor endorsed their strip club, nevertheless, they used Ruiz's image to mislead potential customers as to Ruiz's employment at and/or affiliation with Defendant.

723.    Defendant knew that their use of Ruiz's image would cause consumer confusion as to Ruiz's sponsorship and/or employment at Defendant's strip club.

724.    Upon information and belief, Defendant's use of Ruiz's image did in fact cause consumer confusion as to Ruiz's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

725.    As a direct and proximate result of Defendant's actions, Ruiz has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Ruiz's image, likeness and/or identity, or how Ruiz's image, likeness and/or identity is being depicted by Defendant.

726.    Further, any failure, neglect or default by Defendant will reflect adversely on Ruiz as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Ruiz to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Ruiz.

727.    Due to Defendant's unauthorized use of Ruiz's image, Ruiz has been damaged in an amount to be determined at trial.

**WHEREFORE**, Ruiz respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or

such further relief that is just and proper.

## RUIZ COUNT III
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against Defendant)

728.    Plaintiff Ruiz re-alleges paragraphs 1 through 15, 21, 33 through 35, 39 through 49, and 137 through 152 above, and incorporates the same by reference as though fully set forth herein.

729.    Ruiz has a statutory right of publicity under Section 540.08, Florida Statutes.

730.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

731.    Despite the clear language of Section 540.08, Defendant published Ruiz's image, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

732.    At all times relevant to this action, Ruiz was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

733.    Defendant never sought permission or authority to use Ruiz's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

734.    Ruiz never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or

endorse Defendant's businesses or any of Defendant's events. or activity.

735. Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Ruiz's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

736. Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Ruiz of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Ruiz.

737. At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Ruiz's rights.

738. Alternatively, Defendant acted negligently towards Ruiz in using and disseminating, without authority, her image, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

739. Defendant has caused irreparable harm to Ruiz, her reputation and brand by attributing to Ruiz the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

740. Defendant has also damaged Ruiz as a direct and proximate result of their unauthorized use of Ruiz's image, likeness and/or identity without compensating Ruiz. Defendant's conduct has been despicable and taken in conscious disregard of Ruiz's rights.

**WHEREFORE**, Ruiz respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to,

both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

### RUIZ COUNT IV
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against Defendant)**

741.     Plaintiff Ruiz re-alleges paragraphs 1 through 15, 21, 33 through 35, 39 through 49, and 137 through 152 above, and incorporates the same by reference as though fully set forth herein.

742.     Ruiz has a common law right of publicity.

743.     Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Ruiz without express written or oral consent to such use.

744.     At all times relevant to this action, Ruiz was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

745.     Defendant published, printed, displayed and/or publicly used Ruiz's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

746.     Defendant took these actions without Ruiz's permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Ruiz's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

747.     Ruiz never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

748.     Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Ruiz's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

749.     Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Ruiz of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Ruiz.

750.     At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Ruiz's rights.

751.     Alternatively, Defendant acted negligently towards Ruiz in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

752.     Defendant has caused irreparable harm to Ruiz, her reputation and brand by attributing to Ruiz the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

753.     Defendant has also damaged Ruiz as a direct and proximate result of their unauthorized use of Ruiz's image, likeness and/or identity without compensating Ruiz.

**WHEREFORE**, Ruiz respectfully requests that the Court issue a judgment against

Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## RUIZ COUNT V
### (Conversion against Defendant)

754.    Plaintiff Ruiz re-alleges paragraphs 1 through 15, 21, 33 through 35, 39 through 49, and 137 through 152 above, and incorporates the same by reference as though fully set forth herein.

755.    Ruiz is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

756.    Ruiz has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

757.    By their acts and conduct alleged above, Defendant has converted Ruiz's property rights, including without limitation, Ruiz's image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

758.    Ruiz is informed and believes and on such information alleges that Defendant has refused to return Ruiz's property to her or pay for the deprivation of Ruiz's property.

759.    As a result, Ruiz has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Ruiz alleges that the same are within the jurisdiction of the Court.

760.    Further, Ruiz is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Ruiz's rights.

**WHEREFORE**, Ruiz respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

## <u>RUIZ COUNT VI</u>
### (Unjust Enrichment against Defendant)

761.    Plaintiff Ruiz re-alleges paragraphs 1 through 15, 21, 33 through 35, 39 through 49, and 137 through 152 above, and incorporates the same by reference as though fully set forth herein.

762.    Ruiz has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

763.    At all times relevant to this action, Ruiz was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

764.    Defendant were aware that Ruiz's image, likeness and/or identity were valuable.

765.    Defendant were aware of the resulting benefit from usage of Ruiz's image, likeness and/or identity.

766.    Defendant has retained profits and other benefits conferred upon them by using Ruiz's image, likeness and/or identity to promote and advertise Defendant's

businesses and/or Defendant's events and activities.

767.     It would be inequitable for Defendant to retain the benefits conferred upon them by using Ruiz's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Ruiz respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Denise Trlica a/k/a Denise Milani's Causes of Action*

<u>**MILANI COUNT I**</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against Defendant)**

768.     Plaintiff Milani re-alleges paragraphs 1 through 15, 22, 33 through 35, 39 through 49, and 153 through 167 above, and incorporates the same by reference as though fully set forth herein.

769.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Milani from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

770.     At all times relevant to this action, Milani was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

771.    Defendant used Milani's image, likeness and/or identity as described herein without authority to create the perception that Milani worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

772.    Defendant's use of Milani's image, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

773.    Defendant's unauthorized use of Milani's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Milani worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Milani would participate in or appear at the specific events promoted in the advertisements.

774.    Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Milani worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

775.    Upon information and belief, Defendant's false advertising described above

did, in fact, deceive and/or cause consumer confusion as to whether Milani worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

776.    Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

777.    Defendant's unauthorized use of Milani's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

778.    Defendant knew or should have known that their unauthorized use of Milani's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

779. Defendant's unauthorized use of Milani's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

780. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

781. Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Milani of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Milani.

782. The method and manner in which Defendant used the image of Milani further evinces that Defendant were aware of or consciously disregarded the fact that Milani did not consent to Defendant's use of the image to advertise Defendant's businesses.

783. Defendant has caused irreparable harm to Milani, her reputation and brand by attributing to Milani the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

784. Defendant's unauthorized use of Milani's image, likeness and/or identity directly and proximately caused and continue to cause damage to Milani in an amount to be determined at trial.

**WHEREFORE**, Milani respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### MILANI COUNT II
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**

**False Endorsement against Defendant**)

785.    Plaintiff Milani re-alleges paragraphs 1 through 15, 22, 33 through 35, 39 through 49, and 153 through 167 above, and incorporates the same by reference as though fully set forth herein.

786.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Milani from the conduct described herein.

787.    Defendant used Milani's image to create the false impression with the public that Milani either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

788.    Thus, this was done in furtherance of Defendant's commercial benefit.

789.    Milani is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Milani's images in magazines and online.

790.    Both Milani and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

791.    As such, an unauthorized use of Milani's image to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Milani.

792.    Defendant's use of Milani's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Milani's fans and present and prospective clients into believing that Defendant's

advertisements are endorsed by Milani, or sponsored, approved or associated with Milani.

793.    Despite the fact that Defendant were at all times aware that Milani neither worked at, nor endorsed their strip club, nevertheless, they used Milani's image to mislead potential customers as to Milani's employment at and/or affiliation with Defendant.

794.    Defendant knew that their use of Milani's image would cause consumer confusion as to Milani's sponsorship and/or employment at Defendant's strip club.

795.    Upon information and belief, Defendant's use of Milani's image did in fact cause consumer confusion as to Milani's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

796.    As a direct and proximate result of Defendant's actions, Milani has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Milani's image, likeness and/or identity, or how Milani's image, likeness and/or identity is being depicted by Defendant.

797.    Further, any failure, neglect or default by Defendant will reflect adversely on Milani as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Milani to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Milani.

798.    Due to Defendant's unauthorized use of Milani's image, Milani has been damaged in an amount to be determined at trial.

**WHEREFORE**, Milani respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be

determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**MILANI COUNT III**</u>
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against Defendant**)

799.    Plaintiff Milani re-alleges paragraphs 1 through 15, 22, 33 through 35, 39 through 49, and 153 through 167 above, and incorporates the same by reference as though fully set forth herein.

800.    Milani has a statutory right of publicity under Section 540.08, Florida Statutes.

801.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

802.    Despite the clear language of Section 540.08, Defendant published Milani's image, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

803.    At all times relevant to this action, Milani was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

804.    Defendant never sought permission or authority to use Milani's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

805.    Milani never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

806.    Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Milani's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

807.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Milani of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Milani.

808.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Milani's rights.

809.    Alternatively, Defendant acted negligently towards Milani in using and disseminating, without authority, her image, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

810.    Defendant has caused irreparable harm to Milani, her reputation and brand by attributing to Milani the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

811.    Defendant has also damaged Milani as a direct and proximate result of their unauthorized use of Milani's image, likeness and/or identity without compensating Milani. Defendant's conduct has been despicable and taken in conscious disregard of Milani's

rights.

WHEREFORE, Milani respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## MILANI COUNT IV
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against Defendant)**

812.    Plaintiff Milani re-alleges paragraphs 1 through 15, 22, 33 through 35, 39 through 49, and 153 through 167 above, and incorporates the same by reference as though fully set forth herein.

813.    Milani has a common law right of publicity.

814.    Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Milani without express written or oral consent to such use.

815.    At all times relevant to this action, Milani was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

816.    Defendant published, printed, displayed and/or publicly used Milani's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

817.    Defendant took these actions without Milani's permission, consent or

authority. In fact, Defendant never sought permission nor authority to use Milani's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events or activity.

818.   Milani never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

819.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Milani's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

820.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Milani of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Milani.

821.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Milani's rights.

822.   Alternatively, Defendant acted negligently towards Milani in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

823.   Defendant has caused irreparable harm to Milani, her reputation and brand by attributing to Milani the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

824.    Defendant has also damaged Milani as a direct and proximate result of their unauthorized use of Milani's image, likeness and/or identity without compensating Milani.

**WHEREFORE**, Milani respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## MILANI COUNT V
### (Conversion against Defendant)

825.    Plaintiff Milani re-alleges paragraphs 1 through 15, 22, 33 through 35, 39 through 49, and 153 through 167 above, and incorporates the same by reference as though fully set forth herein.

826.    Milani is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

827.    Milani has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

828.    By their acts and conduct alleged above, Defendant has converted Milani's property rights, including without limitation, Milani's image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

829.    Milani is informed and believes and on such information alleges that Defendant has refused to return Milani's property to her or pay for the deprivation of Milani's property.

830.    As a result, Milani has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Milani alleges that the same are within the jurisdiction of the Court.

831.    Further, Milani is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Milani's rights.

**WHEREFORE**, Milani respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

## MILANI COUNT VI
### (Unjust Enrichment against Defendant)

832.    Plaintiff Milani re-alleges paragraphs 1 through 15, 22, 33 through 35, 39 through 49, and 153 through 167 above, and incorporates the same by reference as though fully set forth herein.

833.    Milani has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

834.    At all times relevant to this action, Milani was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

835.    Defendant were aware that Milani's image, likeness and/or identity were valuable.

836.    Defendant were aware of the resulting benefit from usage of Milani's image, likeness and/or identity.

837.    Defendant has retained profits and other benefits conferred upon them by using Milani's image, likeness and/or identity to promote and advertise Defendant's businesses and/or Defendant's events and activities.

838.    It would be inequitable for Defendant to retain the benefits conferred upon them by using Milani's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Milani respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Jaclyn Swedberg's Causes of Action*

### SWEDBERG COUNT I
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising against Porky's Cabaret, Inc. d/b/a Bella's Cabaret)**

839.    Plaintiff Swedberg re-alleges paragraphs 1 through 15, 23, 33 through 35, 39 through 49, and 168 through 181 above, and incorporates the same by reference as though fully set forth herein.

840.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Bella's Cabaret and protects Swedberg from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her

or another person's goods, services or commercial activities . . . ."   15 U.S.C. §1125(a)(1)(B).

841.   At all times relevant to this action, Swedberg was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Porky's Cabaret, Inc. for Bella's Cabaret's benefit.

842.   Bella's Cabaret used Swedberg's image, likeness and/or identity as described herein without authority to create the perception that Swedberg worked at or was otherwise affiliated with Bella's Cabaret's strip club, endorsed Bella's Cabaret's businesses and activities, and/or consented to or authorized Bella's Cabaret to use her image to advertise, promote, and market Bella's Cabaret's businesses and/or Bella's Cabaret's events and activities.

843.   Bella's Cabaret's use of Swedberg's image, likeness and/or identity to advertise, promote and market Bella's Cabaret's businesses and/or Bella's Cabaret's events and activities as described in this Complaint was false and misleading.

844.   Bella's Cabaret's unauthorized use of Swedberg's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Swedberg worked at or was otherwise affiliated with Bella's Cabaret, endorsed Bella's Cabaret's businesses, or Bella's Cabaret's events or activities, or consented to or authorized Bella's Cabaret's usage of her image to advertise, promote, and market Bella's Cabaret's business or Bella's Cabaret's events and activities and/or that Swedberg would participate in or appear at the specific events promoted in the advertisements.

845.   Bella's Cabaret's false advertising described above has the capacity or

tendency to confuse consumers, including actual and prospective patrons of Bella's Cabaret, as to the general quality of attendees and participants of Bella's Cabaret's strip club and in their events, as well as specifically whether Swedberg worked at or was otherwise affiliated with Bella's Cabaret, endorsed Bella's Cabaret's businesses or Bella's Cabaret's events or activities, or consented to or authorized Bella's Cabaret's usage of her image to advertise, promote, and market Bella's Cabaret's businesses or Bella's Cabaret's events and activities.

846.   Upon information and belief, Bella's Cabaret's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Swedberg worked at or was otherwise affiliated with Bella's Cabaret, endorsed Bella's Cabaret's businesses or Bella's Cabaret's events and activities, or consented to or authorized Bella's Cabaret's usage of her image to advertise, promote, and market Bella's Cabaret's businesses or Bella's Cabaret's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Bella's Cabaret, visit Bella's Cabaret's strip club, and participate in events at Bella's Cabaret's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Bella's Cabaret, visit Bella's Cabaret's strip club and take part in the events at Bella's Cabaret's strip club.

847.   Bella's Cabaret's advertisements, promotions and marketing of Bella's Cabaret's strip club and events occur in and are targeted to interstate commerce. Specifically, Bella's Cabaret promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Bella's Cabaret principally use the World Wide Web, social media and other

vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Bella's Cabaret's events.

848.   Bella's Cabaret's unauthorized use of Swedberg's image, likeness and/or identity as described herein was designed to benefit Bella's Cabaret's businesses interests by, among other things, promoting Bella's Cabaret's strip club and activities and attracting clientele to Bella's Cabaret's strip club.

849.   Bella's Cabaret knew or should have known that their unauthorized use of Swedberg's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

850.   Bella's Cabaret's unauthorized use of Swedberg's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

851.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

852.   Bella's Cabaret had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Swedberg of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Swedberg.

853.   The method and manner in which Bella's Cabaret used the image of Swedberg further evinces that Bella's Cabaret were aware of or consciously disregarded the fact that Swedberg did not consent to Bella's Cabaret's use of the image to advertise Bella's Cabaret's businesses.

854.   Bella's Cabaret have caused irreparable harm to Swedberg, her reputation and brand by attributing to Swedberg the adult entertainment and striptease lifestyle and

activities at Bella's Cabaret's strip club.

855.    Bella's Cabaret's unauthorized use of Swedberg's image, likeness and/or identity directly and proximately caused and continue to cause damage to Swedberg in an amount to be determined at trial.

**WHEREFORE**, Swedberg respectfully requests that the Court issue a judgment against Bella's Cabaret and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Bella's Cabaret's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**SWEDBERG COUNT II**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement against Porky's Cabaret, Inc. d/b/a Bella's Cabaret)**

856.    Plaintiff Swedberg re-alleges paragraphs 1 through 15, 23, 33 through 35, 39 through 49, and 168 through 181 above, and incorporates the same by reference as though fully set forth herein.

857.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Porky's Cabaret, Inc. d/b/a Bella's Cabaret, and protects Swedberg from the conduct described herein.

858.    Bella's Cabaret used Swedberg's image to create the false impression with the public that Swedberg either worked at Bella's Cabaret, or endorsed Bella's Cabaret. This was done to promote and attract clientele to Bella's Cabaret, and thereby generate revenue for Bella's Cabaret.

859.    Thus, this was done in furtherance of Bella's Cabaret's commercial benefit.

860.    Swedberg is in the business of commercializing her identity and selling her

images to reputable brands and companies for profit. Bella's Cabaret's customers are the exact demographic that views Swedberg's images in magazines and online.

861.   Both Swedberg and Bella's Cabaret compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

862.   As such, an unauthorized use of Swedberg's image to promote strip club created an undeniable confusion in Bella's Cabaret consumers' minds, which lead to competitive injury to Swedberg.

863.   Bella's Cabaret's use of Swedberg's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Swedberg's fans and present and prospective clients into believing that Bella's Cabaret's advertisements are endorsed by Swedberg, or sponsored, approved or associated with Swedberg.

864.   Despite the fact that Bella's Cabaret were at all times aware that Swedberg neither worked at, nor endorsed their strip club, nevertheless, they used Swedberg's image to mislead potential customers as to Swedberg's employment at and/or affiliation with Bella's Cabaret.

865.   Bella's Cabaret knew that their use of Swedberg's image would cause consumer confusion as to Swedberg's sponsorship and/or employment at Bella's Cabaret.

866.   Upon information and belief, Bella's Cabaret's use of Swedberg's image did in fact cause consumer confusion as to Swedberg's employment at and/or endorsement of Bella's Cabaret's businesses, and the goods and services provided by Bella's Cabaret.

867.   As a direct and proximate result of Bella's Cabaret's actions, Swedberg has

no control over the nature and quality of the line of products or services provided by Bella's Cabaret, the nature of the advertisement depicting Swedberg's image, likeness and/or identity, or how Swedberg's image, likeness and/or identity is being depicted by Bella's Cabaret.

868.    Further, any failure, neglect or default by Bella's Cabaret will reflect adversely on Swedberg as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Swedberg to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Swedberg.

869.    Due to Bella's Cabaret's unauthorized use of Swedberg's image, Swedberg has been damaged in an amount to be determined at trial.

**WHEREFORE**, Swedberg respectfully requests that the Court enter a judgment against Bella's Cabaret and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Bella's Cabaret's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### SWEDBERG COUNT III
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness against Porky's Cabaret, Inc.
d/b/a Bella's Cabaret)**

870.    Plaintiff Swedberg re-alleges paragraphs 1 through 15, 23, 33 through 35, 39 through 49, and 168 through 181 above, and incorporates the same by reference as though fully set forth herein.

871.    Swedberg has a statutory right of publicity under Section 540.08, Florida

Statutes.

872.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

873.    Despite the clear language of Section 540.08, Porky's Cabaret, Inc.published Swedberg's image, likeness and/or identity on social media outlets, among others, to promote, advertise and market Bella's Cabaret's strip club and/or Bella's Cabaret's events and activities.

874.    At all times relevant to this action, Swedberg was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Bella's Cabaret for Bella's Cabaret's benefit.

875.    Bella's Cabaret never sought permission or authority to use Swedberg's image, likeness and/or identity to advertise, promote, market or endorse Bella's Cabaret's businesses or any Bella's Cabaret's event or activity.

876.    Swedberg never consented to, permitted, assigned, licensed, or otherwise agreed to Bella's Cabaret's use of her image, likeness and/or identity to advertise, promote, market or endorse Bella's Cabaret's businesses or any Bella's Cabaret's event or activity.

877.    Bella's Cabaret intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Swedberg's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

878.    Bella's Cabaret had actual or constructive knowledge or consciously

disregarded the wrongfulness of their conduct, deprived Swedberg of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Swedberg.

879.    At a minimum, Bella's Cabaret's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Swedberg's rights.

880.    Alternatively, Bella's Cabaret acted negligently towards Swedberg in using and disseminating, without authority, her image, likeness and/or identity on social media outlets to promote, advertise and market Bella's Cabaret's strip club and/or Bella's Cabaret's events and activities.

881.    Bella's Cabaret have caused irreparable harm to Swedberg, her reputation and brand by attributing to Swedberg the adult entertainment and striptease lifestyle and activities at Bella's Cabaret's strip club.

882.    Bella's Cabaret have also damaged Swedberg as a direct and proximate result of their unauthorized use of Swedberg's image, likeness and/or identity without compensating Swedberg.  Bella's Cabaret's conduct has been despicable and taken in conscious disregard of Swedberg's rights. Accordingly, Swedberg is entitled to an award of punitive damages against Bella's Cabaret in an amount sufficient to punish and make an example of Bella's Cabaret. Therefore, Swedberg reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Swedberg respectfully requests that the Court issue a judgment against Bella's Cabaret for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, punitive damages according to proof, costs, interest, royalties, and restitution of Bella's Cabaret's unlawful proceeds, including Bella's

Cabaret's profits and other relief deemed just and proper by this Court.

## SWEDBERG COUNT IV
### (Violation of Common Law Right of Publicity; Unauthorized Misappropriation of Name or Likeness against Porky's Cabaret, Inc. d/b/a Bella's Cabaret)

883.    Plaintiff Swedberg re-alleges paragraphs 1 through 15, 23, 33 through 35, 39 through 49, and 168 through 181 above, and incorporates the same by reference as though fully set forth herein.

884.    Swedberg has a common law right of publicity.

885.    Porky's Cabaret, Inc.may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Swedberg without express written or oral consent to such use.

886.    At all times relevant to this action, Swedberg was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Bella's Cabaret for Bella's Cabaret's benefit.

887.    Bella's Cabaret published, printed, displayed and/or publicly used Swedberg's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Bella's Cabaret and Bella's Cabaret's events and activities.

888.    Bella's Cabaret took these actions without Swedberg's permission, consent or authority.   In fact, Bella's Cabaret never sought permission nor authority to use Swedberg's image, likeness and/or identity to advertise, promote, market or endorse Bella's Cabaret's businesses or any Bella's Cabaret's event or activity.

889.    Swedberg never consented to, permitted, assigned, licensed, or otherwise agreed to Bella's Cabaret's use of her image, likeness and/or identity to advertise, promote,

market or endorse Bella's Cabaret's businesses or any Bella's Cabaret's event or activity.

890.    Bella's Cabaret intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Swedberg's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

891.    Bella's Cabaret had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Swedberg of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Swedberg.

892.    At a minimum, Bella's Cabaret's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Swedberg's rights.

893.    Alternatively, Bella's Cabaret acted negligently towards Swedberg in using and disseminating, without authority, her image, likeness and/or identity on Bella's Cabaret's social media outlets to promote, advertise and market Bella's Cabaret's strip club and Bella's Cabaret's events and activities.

894.    Bella's Cabaret have caused irreparable harm to Swedberg, her reputation and brand by attributing to Swedberg the adult entertainment and striptease lifestyle and activities at Bella's Cabaret's strip club.

895.    Bella's Cabaret have also damaged Swedberg as a direct and proximate result of their unauthorized use of Swedberg's image, likeness and/or identity without compensating Swedberg.

**WHEREFORE**, Swedberg respectfully requests that the Court issue a judgment against Bella's Cabaret for all remedies available under a claim of misappropriation

including, but not limited to, actual damages, costs, interest, and restitution of Bella's Cabaret's unlawful proceeds, including Bella's Cabaret's profits and other relief deemed just and proper by this Court.

**SWEDBERG COUNT V**
**(Conversion against Defendant)**

896.     Plaintiff Swedberg re-alleges paragraphs 1 through 15, 23, 33 through 35, 39 through 49, and 168 through 181 above, and incorporates the same by reference as though fully set forth herein.

897.     Swedberg is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Porky's Cabaret, Inc.for Bella's Cabaret's benefit.

898.     Swedberg has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Bella's Cabaret for Bella's Cabaret's benefit.

899.     By their acts and conduct alleged above, Bella's Cabaret have converted Swedberg's property rights, including without limitation, Swedberg's image, likeness and/or identity for Bella's Cabaret's use and wrongful disposition for financial gain.

900.     Swedberg is informed and believes and on such information alleges that Bella's Cabaret have refused to return Swedberg's property to her or pay for the deprivation of Swedberg's property.

901.     As a result, Swedberg has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Swedberg alleges that the same are within the jurisdiction of the Court.

902.     Further, Swedberg is informed and believes and thereon alleges that in

engaging in the conduct described above, Bella's Cabaret acted with oppression, fraud, and/or malice. Bella's Cabaret's conduct has been despicable and taken in conscious disregard of Swedberg's rights.

WHEREFORE, Swedberg respectfully requests this Court to issue a judgment against Bella's Cabaret and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Bella's Cabaret's unlawful proceeds, including Bella's Cabaret's profits, and/or other relief deemed just and proper.

## SWEDBERG COUNT VI
### (Unjust Enrichment against Defendant)

903. Plaintiff Swedberg re-alleges paragraphs 1 through 15, 23, 33 through 35, 39 through 49, and 168 through 181 above, and incorporates the same by reference as though fully set forth herein.

904. Swedberg has conferred a benefit upon Porky's Cabaret, Inc.by virtue of Bella's Cabaret's usage of her image without compensation.

905. At all times relevant to this action, Swedberg was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Bella's Cabaret for Bella's Cabaret's benefit.

906. Bella's Cabaret were aware that Swedberg's image, likeness and/or identity were valuable.

907. Bella's Cabaret were aware of the resulting benefit from usage of Swedberg's image, likeness and/or identity.

908. Bella's Cabaret have retained profits and other benefits conferred upon them by using Swedberg's image, likeness and/or identity to promote and advertise Bella's

Cabaret's businesses and/or Bella's Cabaret's events and activities.

909.    It would be inequitable for Bella's Cabaret to retain the benefits conferred upon them by using Swedberg's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Swedberg respectfully requests that the Court issue a judgment against Bella's Cabaret for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Bella's Cabaret's gross profits and such other and further relief in law or equity as this Court deems just and proper.

### *Plaintiff Jaime Edmondson-Longoria's Causes of Action*

### EDMONDSON COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against Defendant)

910.    Plaintiff Edmondson re-alleges paragraphs 1 through 15, 24, 33 through 35, 39 through 49, and 182 through 196 above, and incorporates the same by reference as though fully set forth herein.

911.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Edmondson from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

912.    At all times relevant to this action, Edmondson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully

converted by Defendant for Defendant's benefit.

913.   Defendant used Edmondson's images, likeness and/or identity as described herein without authority to create the perception that Edmondson worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her images to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

914.   Defendant's use of Edmondson's images, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

915.   Defendant's unauthorized use of Edmondson's images, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Edmondson worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Edmondson would participate in or appear at the specific events promoted in the advertisements.

916.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Edmondson worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

917.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Edmondson worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events and activities, or consented to or authorized Defendant's usage of her images to advertise, promote, and market Defendant's businesses or Defendant's events and activities.   Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

918.   Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.   Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

919.   Defendant's unauthorized use of Edmondson's images, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

920.   Defendant knew or should have known that their unauthorized use of Edmondson's images, likeness and/or identity would cause consumer confusion as

described in this Complaint.

921.    Defendant's unauthorized use of Edmondson's images, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

922.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

923.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Edmondson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Edmondson.

924.    The method and manner in which Defendant used the images of Edmondson further evinces that Defendant were aware of or consciously disregarded the fact that Edmondson did not consent to Defendant's use of the images to advertise Defendant's businesses.

925.    Defendant has caused irreparable harm to Edmondson, her reputation and brand by attributing to Edmondson the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

926.    Defendant's unauthorized use of Edmondson's images, likeness and/or identity directly and proximately caused and continue to cause damage to Edmondson in an amount to be determined at trial.

**WHEREFORE**, Edmondson respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment

interest, and/or such further relief that is just and proper.

## EDMONDSON COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Endorsement against Defendant)

927. Plaintiff Edmondson re-alleges paragraphs 1 through 15, 24, 33 through 35, 39 through 49, and 182 through 196 above, and incorporates the same by reference as though fully set forth herein.

928. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Edmondson from the conduct described herein.

929. Defendant used Edmondson's images to create the false impression with the public that Edmondson either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

930. Thus, this was done in furtherance of Defendant's commercial benefit.

931. Edmondson is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Edmondson's images in magazines and online.

932. Both Edmondson and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

933. As such, an unauthorized use of Edmondson's images to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Edmondson.

934. Defendant's use of Edmondson's images, likeness and/or identity

constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Edmondson's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Edmondson, or sponsored, approved or associated with Edmondson.

935.    Despite the fact that Defendant were at all times aware that Edmondson neither worked at, nor endorsed their strip club, nevertheless, they used Edmondson's images to mislead potential customers as to Edmondson's employment at and/or affiliation with Defendant.

936.    Defendant knew that their use of Edmondson's images would cause consumer confusion as to Edmondson's sponsorship and/or employment at Defendant's strip club.

937.    Upon information and belief, Defendant's use of Edmondson's images did in fact cause consumer confusion as to Edmondson's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

938.    As a direct and proximate result of Defendant's actions, Edmondson has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Edmondson's images, likeness and/or identity, or how Edmondson's image, likeness and/or identity is being depicted by Defendant.

939.    Further, any failure, neglect or default by Defendant will reflect adversely on Edmondson as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Edmondson to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable

expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Edmondson.

940.    Due to Defendant's unauthorized use of Edmondson's image, Edmondson has been damaged in an amount to be determined at trial.

**WHEREFORE**, Edmondson respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### EDMONDSON COUNT III
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness against Defendant)**

941.    Plaintiff Edmondson re-alleges paragraphs 1 through 15, 24, 33 through 35, 39 through 49, and 182 through 196 above, and incorporates the same by reference as though fully set forth herein.

942.    Edmondson has a statutory right of publicity under Section 540.08, Florida Statutes.

943.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

944.    Despite the clear language of Section 540.08, Defendant published Edmondson's images, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and

activities.

945.    At all times relevant to this action, Edmondson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

946.    Defendant never sought permission or authority to use Edmondson's images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

947.    Edmondson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

948.    Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Edmondson's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

949.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Edmondson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Edmondson.

950.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Edmondson's rights.

951.    Alternatively, Defendant acted negligently towards Edmondson in using and disseminating, without authority, her images, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events

and activities.

952.     Defendant has caused irreparable harm to Edmondson, her reputation and brand by attributing to Edmondson the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

953.     Defendant has also damaged Edmondson as a direct and proximate result of their unauthorized use of Edmondson's images, likeness and/or identity without compensating Edmondson.   Defendant's conduct has been despicable and taken in conscious disregard of Edmondson's rights.

**WHEREFORE**, Edmondson respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**EDMONDSON COUNT IV**</u>
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against Defendant**)

954.     Plaintiff Edmondson re-alleges paragraphs 1 through 15, 24, 33 through 35, 39 through 49, and 182 through 196 above, and incorporates the same by reference as though fully set forth herein.

955.     Edmondson has a common law right of publicity.

956.     Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Edmondson without express written or oral consent to such use.

957.     At all times relevant to this action, Edmondson was and is the exclusive

owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

958.    Defendant published, printed, displayed and/or publicly used Edmondson's images, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

959.    Defendant took these actions without Edmondson's permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Edmondson's images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

960.    Edmondson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her images, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

961.    Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Edmondson's images, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

962.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Edmondson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Edmondson.

963.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Edmondson's rights.

964.    Alternatively, Defendant acted negligently towards Edmondson in using and disseminating, without authority, her images, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

965.    Defendant has caused irreparable harm to Edmondson, her reputation and brand by attributing to Edmondson the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

966.    Defendant has also damaged Edmondson as a direct and proximate result of their unauthorized use of Edmondson's images, likeness and/or identity without compensating Edmondson.

**WHEREFORE**, Edmondson respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## EDMONDSON COUNT V
### (Conversion against Defendant)

967.    Plaintiff Edmondson re-alleges paragraphs 1 through 15, 24, 33 through 35, 39 through 49, and 182 through 196 above, and incorporates the same by reference as though fully set forth herein.

968.    Edmondson is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

969.    Edmondson has, and at all times relevant herein had, an intangible property

interest in her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

970.    By their acts and conduct alleged above, Defendant has converted Edmondson's property rights, including without limitation, Edmondson's images, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

971.    Edmondson is informed and believes and on such information alleges that Defendant has refused to return Edmondson's property to her or pay for the deprivation of Edmondson's property.

972.    As a result, Edmondson has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Edmondson alleges that the same are within the jurisdiction of the Court.

973.    Further, Edmondson is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Edmondson's rights.

**WHEREFORE**, Edmondson respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

## EDMONDSON COUNT VI
### (Unjust Enrichment against Defendant)

974.    Plaintiff Edmondson re-alleges paragraphs 1 through 15, 24, 33 through 35, 39 through 49, and 182 through 196 above, and incorporates the same by reference as

though fully set forth herein.

975.    Edmondson has conferred a benefit upon Defendant by virtue of Defendant's usage of her images without compensation.

976.    At all times relevant to this action, Edmondson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

977.    Defendant were aware that Edmondson's images, likeness and/or identity were valuable.

978.    Defendant were aware of the resulting benefit from usage of Edmondson's images, likeness and/or identity.

979.    Defendant has retained profits and other benefits conferred upon them by using Edmondson's images, likeness and/or identity to promote and advertise Defendant's businesses and/or Defendant's events and activities.

980.    It would be inequitable for Defendant to retain the benefits conferred upon them by using Edmondson's images, likeness and/or identity without paying fair value for the images.

**WHEREFORE**, Edmondson respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Jessica Burciaga's Causes of Action*

<u>**BURCIAGA COUNT I**</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**

**False Advertising against Defendant**)

981.    Plaintiff Burciaga re-alleges paragraphs 1 through 15, 25, 33 through 35, 39 through 49, and 197 through 212 above, and incorporates the same by reference as though fully set forth herein.

982.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Burciaga from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

983.    At all times relevant to this action, Burciaga was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

984.    Defendant used Burciaga's image, likeness and/or identity as described herein without authority to create the perception that Burciaga worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

985.    Defendant's use of Burciaga's image, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

986.    Defendant's unauthorized use of Burciaga's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying,

among other things, that Burciaga worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Burciaga would participate in or appear at the specific events promoted in the advertisements.

987.    Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Burciaga worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

988.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Burciaga worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

989.    Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

990.    Defendant's unauthorized use of Burciaga's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

991.    Defendant knew or should have known that their unauthorized use of Burciaga's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

992.    Defendant's unauthorized use of Burciaga's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

993.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

994.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Burciaga of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga.

995.    The method and manner in which Defendant used the image of Burciaga further evinces that Defendant were aware of or consciously disregarded the fact that

Burciaga did not consent to Defendant's use of the image to advertise Defendant's businesses.

996.    Defendant has caused irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

997.    Defendant's unauthorized use of Burciaga's image, likeness and/or identity directly and proximately caused and continue to cause damage to Burciaga in an amount to be determined at trial.

**WHEREFORE**, Burciaga respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**BURCIAGA COUNT II**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Endorsement against Defendant)**

998.    Plaintiff Burciaga re-alleges paragraphs 1 through 15, 25, 33 through 35, 39 through 49, and 197 through 212 above, and incorporates the same by reference as though fully set forth herein.

999.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Burciaga from the conduct described herein.

1000.   Defendant used Burciaga's image to create the false impression with the public that Burciaga either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's strip club, and

thereby generate revenue for Defendant.

1001.   Thus, this was done in furtherance of Defendant's commercial benefit.

1002.   Burciaga is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Burciaga's images in magazines and online.

1003.   Both Burciaga and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

1004.   As such, an unauthorized use of Burciaga's image to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Burciaga.

1005.   Defendant's use of Burciaga's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Burciaga's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Burciaga, or sponsored, approved or associated with Burciaga.

1006.   Despite the fact that Defendant were at all times aware that Burciaga neither worked at, nor endorsed their strip club, nevertheless, they used Burciaga's image to mislead potential customers as to Burciaga's employment at and/or affiliation with Defendant.

1007.   Defendant knew that their use of Burciaga's image would cause consumer confusion as to Burciaga's sponsorship and/or employment at Defendant's strip club.

1008.   Upon information and belief, Defendant's use of Burciaga's image did in

fact cause consumer confusion as to Burciaga's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1009.   As a direct and proximate result of Defendant's actions, Burciaga has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Burciaga's image, likeness and/or identity, or how Burciaga's image, likeness and/or identity is being depicted by Defendant.

1010.   Further, any failure, neglect or default by Defendant will reflect adversely on Burciaga as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Burciaga to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Burciaga.

1011.   Due to Defendant's unauthorized use of Burciaga's image, Burciaga has been damaged in an amount to be determined at trial.

**WHEREFORE**, Burciaga respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**BURCIAGA COUNT III**</u>
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against Defendant**)

1012.   Plaintiff Burciaga re-alleges paragraphs1 through 15, 25, 33 through 35, 39 through 49, and 197 through 212 above, and incorporates the same by reference as though

fully set forth herein.

1013.   Burciaga has a statutory right of publicity under Section 540.08, Florida Statutes.

1014.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

1015.   Despite the clear language of Section 540.08, Defendant published Burciaga's image, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

1016.   At all times relevant to this action, Burciaga was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1017.   Defendant never sought permission or authority to use Burciaga's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1018.   Burciaga never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1019.   Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Burciaga's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other

commercial or advertising purposes as detailed in this Complaint.

1020.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Burciaga of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga.

1021.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Burciaga's rights.

1022.   Alternatively, Defendant acted negligently towards Burciaga in using and disseminating, without authority, her image, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

1023.   Defendant has caused irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1024.   Defendant has also damaged Burciaga as a direct and proximate result of their unauthorized use of Burciaga's image, likeness and/or identity without compensating Burciaga. Defendant's conduct has been despicable and taken in conscious disregard of Burciaga's rights.

**WHEREFORE**, Burciaga respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

**BURCIAGA COUNT IV**
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against Defendant)**

1025.   Plaintiff Burciaga re-alleges paragraphs 1 through 15, 25, 33 through 35, 39 through 49, and 197 through 212 above, and incorporates the same by reference as though fully set forth herein.

1026.   Burciaga has a common law right of publicity.

1027.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Burciaga without express written or oral consent to such use.

1028.   At all times relevant to this action, Burciaga was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1029.   Defendant published, printed, displayed and/or publicly used Burciaga's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

1030.   Defendant took these actions without Burciaga's permission, consent or authority. In fact, Defendant never sought permission nor authority to use Burciaga's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1031.   Burciaga never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1032.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Burciaga's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1033.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Burciaga of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga.

1034.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Burciaga's rights.

1035.   Alternatively, Defendant acted negligently towards Burciaga in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

1036.   Defendant has caused irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1037.   Defendant has also damaged Burciaga as a direct and proximate result of their unauthorized use of Burciaga's image, likeness and/or identity without compensating Burciaga.

**WHEREFORE**, Burciaga respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful

proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## BURCIAGA COUNT V
### (Conversion against Defendant)

1038.   Plaintiff Burciaga re-alleges paragraphs 1 through 15, 25, 33 through 35, 39 through 49, and 197 through 212 above, and incorporates the same by reference as though fully set forth herein.

1039.   Burciaga is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1040.   Burciaga has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1041.   By their acts and conduct alleged above, Defendant has converted Burciaga's property rights, including without limitation, Burciaga's image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

1042.   Burciaga is informed and believes and on such information alleges that Defendant has refused to return Burciaga's property to her or pay for the deprivation of Burciaga's property.

1043.   As a result, Burciaga has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Burciaga alleges that the same are within the jurisdiction of the Court.

1044.   Further, Burciaga is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or

malice. Defendant's conduct has been despicable and taken in conscious disregard of Burciaga's rights. Accordingly, Burciaga is entitled to an award of punitive damages against Defendant in an amount sufficient to punish and make an example of Defendant. Therefore, Burciaga reserves the right to seek punitive damages according to proof and pursuant to Fla. Stat. §768.72.

**WHEREFORE**, Burciaga respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, punitive damages according to proof, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

### BURCIAGA COUNT VI
**(Unjust Enrichment against Defendant)**

1045.   Plaintiff Burciaga re-alleges paragraphs 1 through 15, 25, 33 through 35, 39 through 49, and 197 through 212 above, and incorporates the same by reference as though fully set forth herein.

1046.   Burciaga has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

1047.   At all times relevant to this action, Burciaga was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1048.   Defendant were aware that Burciaga's image, likeness and/or identity were valuable.

1049.   Defendant were aware of the resulting benefit from usage of Burciaga's image, likeness and/or identity.

1050.   Defendant has retained profits and other benefits conferred upon them by using Burciaga's image, likeness and/or identity to promote and advertise Defendant's businesses and/or Defendant's events and activities.

1051.   It would be inequitable for Defendant to retain the benefits conferred upon them by using Burciaga's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Burciaga respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Ina Schnitzer a/k/a Jordan Carver's Causes of Action*

<u>CARVER COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against Defendant**)

1052.   Plaintiff Carver re-alleges paragraphs 1 through 15, 26, 33 through 35, 39 through 49, and 213 through 228 above, and incorporates the same by reference as though fully set forth herein.

1053.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Carver from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

1054.   At all times relevant to this action, Carver was and is the exclusive owner

of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1055.   Defendant used Carver' image, likeness and/or identity as described herein without authority to create the perception that Carver worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

1056.   Defendant's use of Carver' image, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

1057.   Defendant's unauthorized use of Carver' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Carver worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Carver would participate in or appear at the specific events promoted in the advertisements.

1058.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Carver worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and

market Defendant's businesses or Defendant's events and activities.

1059. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Carver worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

1060. Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

1061. Defendant's unauthorized use of Carver' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

1062. Defendant knew or should have known that their unauthorized use of

Carver' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1063.   Defendant's unauthorized use of Carver' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1064.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1065.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Carver of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Carver.

1066.   The method and manner in which Defendant used the image of Carver further evinces that Defendant were aware of or consciously disregarded the fact that Carver did not consent to Defendant's use of the image to advertise Defendant's businesses.

1067.   Defendant has caused irreparable harm to Carver, her reputation and brand by attributing to Carver the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1068.   Defendant's unauthorized use of Carver' image, likeness and/or identity directly and proximately caused and continue to cause damage to Carver in an amount to be determined at trial.

**WHEREFORE**, Carver respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by

Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## **CARVER COUNT II**
### (**Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
### **False Endorsement against Defendant**)

1069.   Plaintiff Carver re-alleges paragraphs 1 through 15, 26, 33 through 35, 39 through 49, and 213 through 228 above, and incorporates the same by reference as though fully set forth herein.

1070.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Carver from the conduct described herein.

1071.   Defendant used Carver' image to create the false impression with the public that Carver either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

1072.   Thus, this was done in furtherance of Defendant's commercial benefit.

1073.   Carver is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Carver' images in magazines and online.

1074.   Both Carver and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

1075.   As such, an unauthorized use of Carver' image to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Carver.

1076.  Defendant's use of Carver' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Carver' fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Carver, or sponsored, approved or associated with Carver.

1077.  Despite the fact that Defendant were at all times aware that Carver neither worked at, nor endorsed their strip club, nevertheless, they used Carver' image to mislead potential customers as to Carver' employment at and/or affiliation with Defendant.

1078.  Defendant knew that their use of Carver' image would cause consumer confusion as to Carver' sponsorship and/or employment at Defendant's strip club.

1079.  Upon information and belief, Defendant's use of Carver' image did in fact cause consumer confusion as to Carver' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1080.  As a direct and proximate result of Defendant's actions, Carver has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Carver' image, likeness and/or identity, or how Carver' image, likeness and/or identity is being depicted by Defendant.

1081.  Further, any failure, neglect or default by Defendant will reflect adversely on Carver as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Carver to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Carver.

1082.  Due to Defendant's unauthorized use of Carver' image, Carver has been

damaged in an amount to be determined at trial.

**WHEREFORE**, Carver respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**CARVER COUNT III**</u>
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against Defendant)**

1083.   Plaintiff Carver re-alleges paragraphs 1 through 15, 26, 33 through 35, 39 through 49, and 213 through 228 above, and incorporates the same by reference as though fully set forth herein.

1084.   Carver has a statutory right of publicity under Section 540.08, Florida Statutes.

1085.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

1086.   Despite the clear language of Section 540.08, Defendant published Carver' image, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

1087.   At all times relevant to this action, Carver was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1088.  Defendant never sought permission or authority to use Carver' image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1089.  Carver never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1090.  Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Carver' image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1091.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Carver of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Carver.

1092.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Carver' rights.

1093.   Alternatively, Defendant acted negligently towards Carver in using and disseminating, without authority, her image, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

1094.   Defendant has caused irreparable harm to Carver, her reputation and brand by attributing to Carver the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1095.   Defendant has also damaged Carver as a direct and proximate result of their unauthorized use of Carver' image, likeness and/or identity without compensating Carver. Defendant's conduct has been despicable and taken in conscious disregard of Carver' rights.

**WHEREFORE**, Carver respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

### CARVER COUNT IV
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against Defendant)**

1096.   Plaintiff Carver re-alleges paragraphs 1 through 15, 26, 33 through 35, 39 through 49, and 213 through 228 above, and incorporates the same by reference as though fully set forth herein.

1097.   Carver has a common law right of publicity.

1098.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Carver without express written or oral consent to such use.

1099.   At all times relevant to this action, Carver was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1100.   Defendant published, printed, displayed and/or publicly used Carver' image, likeness and/or identity on their social media outlets, among others, for purposes of

trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

1101.   Defendant took these actions without Carver' permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Carver' image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1102.   Carver never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1103.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Carver' image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1104.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Carver of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Carver.

1105.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Carver' rights.

1106.   Alternatively, Defendant acted negligently towards Carver in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

1107.   Defendant has caused irreparable harm to Carver, her reputation and brand by attributing to Carver the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1108.   Defendant has also damaged Carver as a direct and proximate result of their unauthorized use of Carver' image, likeness and/or identity without compensating Carver.

**WHEREFORE**, Carver respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**CARVER COUNT V**</u>
**(Conversion against Defendant)**

1109.   Plaintiff Carver re-alleges paragraphs 1 through 15, 26, 33 through 35, 39 through 49, and 213 through 228 above, and incorporates the same by reference as though fully set forth herein.

1110.   Carver is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1111.   Carver has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1112.   By their acts and conduct alleged above, Defendant has converted Carver' property rights, including without limitation, Carver' image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

1113.  Carver is informed and believes and on such information alleges that Defendant has refused to return Carver' property to her or pay for the deprivation of Carver' property.

1114.  As a result, Carver has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Carver alleges that the same are within the jurisdiction of the Court.

1115.  Further, Carver is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Carver' rights.

**WHEREFORE**, Carver respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

## <u>CARVER COUNT VI</u>
### (Unjust Enrichment against Defendant)

1116.  Plaintiff Carver re-alleges paragraphs 1 through 15, 26, 33 through 35, 39 through 49, and 213 through 228 above, and incorporates the same by reference as though fully set forth herein.

1117.  Carver has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

1118.  At all times relevant to this action, Carver was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted

by Defendant for Defendant's benefit.

1119.   Defendant were aware that Carver' image, likeness and/or identity were valuable.

1120.   Defendant were aware of the resulting benefit from usage of Carver' image, likeness and/or identity.

1121.   Defendant has retained profits and other benefits conferred upon them by using Carver' image, likeness and/or identity to promote and advertise Defendant's businesses and/or Defendant's events and activities.

1122.   It would be inequitable for Defendant to retain the benefits conferred upon them by using Carver' image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Carver respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Lina Posada's Causes of Action*

<u>**POSADA COUNT I**</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against Defendant**)

1123.   Plaintiff Posada re-alleges paragraphs 1 through 15, 27, 33 through 35, 39 through 49, 229 through 243 above, and incorporates the same by reference as though fully set forth herein.

1124.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to

Defendant and protects Posada from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

1125. At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1126. Defendant used Posada's image, likeness and/or identity as described herein without authority to create the perception that Posada worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

1127. Defendant's use of Posada's image, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

1128. Defendant's unauthorized use of Posada's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Posada worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Posada would participate in or appear at the specific events promoted in the advertisements.

1129.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Posada worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

1130.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Posada worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

1131.   Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise,

market, promote, and entice or lure membership and attendance at Defendant's events.

1132.   Defendant's unauthorized use of Posada's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

1133.   Defendant knew or should have known that their unauthorized use of Posada's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1134.   Defendant's unauthorized use of Posada's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1135.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1136.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

1137.   The method and manner in which Defendant used the image of Posada further evinces that Defendant were aware of or consciously disregarded the fact that Posada did not consent to Defendant's use of the image to advertise Defendant's businesses.

1138.   Defendant has caused irreparable harm to Posada, her reputation and brand by attributing to Posada the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1139.   Defendant's unauthorized use of Posada's image, likeness and/or identity directly and proximately caused and continue to cause damage to Posada in an amount to be determined at trial.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### POSADA COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement against Defendant)

1140.   Plaintiff Posada re-alleges paragraphs 1 through 15, 27, 33 through 35, 39 through 49, 229 through 243 above, and incorporates the same by reference as though fully set forth herein.

1141.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Posada from the conduct described herein.

1142.   Defendant used Posada's image to create the false impression with the public that Posada either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

1143.   Thus, this was done in furtherance of Defendant's commercial benefit.

1144.   Posada is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Posada's images in magazines and online.

1145.  Both Posada and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

1146.  As such, an unauthorized use of Posada's image to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Posada.

1147.  Defendant's use of Posada's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Posada's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Posada, or sponsored, approved or associated with Posada.

1148.  Despite the fact that Defendant were at all times aware that Posada neither worked at, nor endorsed their strip club, nevertheless, they used Posada's image to mislead potential customers as to Posada's employment at and/or affiliation with Defendant.

1149.  Defendant knew that their use of Posada's image would cause consumer confusion as to Posada's sponsorship and/or employment at Defendant's strip club.

1150.  Upon information and belief, Defendant's use of Posada's image did in fact cause consumer confusion as to Posada's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1151.  As a direct and proximate result of Defendant's actions, Posada has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Posada's image, likeness and/or identity, or how Posada's image, likeness and/or identity is being depicted by Defendant.

1152.   Further, any failure, neglect or default by Defendant will reflect adversely on Posada as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Posada to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Posada.

1153.   Due to Defendant's unauthorized use of Posada's image, Posada has been damaged in an amount to be determined at trial.

**WHEREFORE**, Posada respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## POSADA COUNT III
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against Defendant)

1154.   Plaintiff Posada re-alleges paragraphs 1 through 15, 27, 33 through 35, 39 through 49, 229 through 243 above, and incorporates the same by reference as though fully set forth herein.

1155.   Posada has a statutory right of publicity under Section 540.08, Florida Statutes.

1156.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person

without the express written or oral consent to such use."

1157.   Despite the clear language of Section 540.08, Defendant published Posada's image, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

1158.   At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1159.   Defendant never sought permission or authority to use Posada's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1160.   Posada never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1161.   Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Posada's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1162.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

1163.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Posada's rights.

1164.  Alternatively, Defendant acted negligently towards Posada in using and disseminating, without authority, her image, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

1165.  Defendant has caused irreparable harm to Posada, her reputation and brand by attributing to Posada the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1166.  Defendant has also damaged Posada as a direct and proximate result of their unauthorized use of Posada's image, likeness and/or identity without compensating Posada. Defendant's conduct has been despicable and taken in conscious disregard of Posada's rights.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

**POSADA COUNT IV**
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against Defendant)**

1167.  Plaintiff Posada re-alleges paragraphs 1 through 15, 27, 33 through 35, 39 through 49, 229 through 243 above, and incorporates the same by reference as though fully set forth herein.

1168.  Posada has a common law right of publicity.

1169.  Defendant may not publish, print, display or publicly use for purposes of

trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Posada without express written or oral consent to such use.

1170.   At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1171.   Defendant published, printed, displayed and/or publicly used Posada's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

1172.   Defendant took these actions without Posada's permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Posada's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1173.   Posada never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1174.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Posada's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1175.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would

result to Posada.

1176.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Posada's rights.

1177.   Alternatively, Defendant acted negligently towards Posada in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

1178.   Defendant has caused irreparable harm to Posada, her reputation and brand by attributing to Posada the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1179.   Defendant has also damaged Posada as a direct and proximate result of their unauthorized use of Posada's image, likeness and/or identity without compensating Posada.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**POSADA COUNT V**</u>
**(Conversion against Defendant)**

1180.   Plaintiff Posada re-alleges paragraphs 1 through 15, 27, 33 through 35, 39 through 49, 229 through 243 above, and incorporates the same by reference as though fully set forth herein.

1181.   Posada is, and all at relevant times was, the exclusive owner of all rights,

title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1182.   Posada has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1183.   By their acts and conduct alleged above, Defendant has converted Posada's property rights, including without limitation, Posada's image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

1184.   Posada is informed and believes and on such information alleges that Defendant has refused to return Posada's property to her or pay for the deprivation of Posada's property.

1185.   As a result, Posada has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Posada alleges that the same are within the jurisdiction of the Court.

1186.   Further, Posada is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Posada's rights.

**WHEREFORE**, Posada respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

**POSADA COUNT VI**
**(Unjust Enrichment against Defendant)**

1187.   Plaintiff Posada re-alleges paragraphs 1 through 15, 27, 33 through 35, 39 through 49, 229 through 243 above, and incorporates the same by reference as though fully set forth herein.

1188.   Posada has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

1189.   At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1190.   Defendant were aware that Posada's image, likeness and/or identity were valuable.

1191.   Defendant were aware of the resulting benefit from usage of Posada's image, likeness and/or identity.

1192.   Defendant has retained profits and other benefits conferred upon them by using Posada's image, likeness and/or identity to promote and advertise Defendant's businesses and/or Defendant's events and activities.

1193.   It would be inequitable for Defendant to retain the benefits conferred upon them by using Posada's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Posada respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and

proper.

*Plaintiff Lucy Pinder'ss Causes of Action*

**PINDER COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against Defendant)**

1194.   Plaintiff Pinder re-alleges paragraphs 1 through 15, 28, 33 through 35, 39 through 49, 244 through 261 above, and incorporates the same by reference as though fully set forth herein.

1195.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Pinder from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1196.   At all times relevant to this action, Pinder was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1197.   Defendant used Pinder's image, likeness and/or identity as described herein without authority to create the perception that Pinder worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

1198.   Defendant's use of Pinder's image, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

1199.   Defendant's unauthorized use of Pinder's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Pinder worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Pinder would participate in or appear at the specific events promoted in the advertisements.

1200.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Pinder worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

1201.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Pinder worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to

join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

1202.   Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

1203.   Defendant's unauthorized use of Pinder's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

1204.   Defendant knew or should have known that their unauthorized use of Pinder's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1205.   Defendant's unauthorized use of Pinder's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1206.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1207.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Pinder of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pinder.

1208.   The method and manner in which Defendant used the image of Pinder further evinces that Defendant were aware of or consciously disregarded the fact that Pinder did not consent to Defendant's use of the image to advertise Defendant's businesses.

1209.   Defendant has caused irreparable harm to Pinder, her reputation and brand by attributing to Pinder the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1210.   Defendant's unauthorized use of Pinder's image, likeness and/or identity directly and proximately caused and continue to cause damage to Pinder in an amount to be determined at trial.

**WHEREFORE**, Pinder respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## PINDER COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement against Defendant)

1211.   Plaintiff Pinder re-alleges paragraphs 1 through 15, 28, 33 through 35, 39 through 49, 244 through 261 above, and incorporates the same by reference as though fully set forth herein.

1212.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Pinder from the conduct described herein.

1213.   Defendant used Pinder's image to create the false impression with the public that Pinder either worked at Defendant's strip club, or endorsed Defendant's businesses.

This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

1214.   Thus, this was done in furtherance of Defendant's commercial benefit.

1215.   Pinder is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Pinder's images in magazines and online.

1216.   Both Pinder and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

1217.   As such, an unauthorized use of Pinder's image to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Pinder.

1218.   Defendant's use of Pinder's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Pinder's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Pinder, or sponsored, approved or associated with Pinder.

1219.   Despite the fact that Defendant were at all times aware that Pinder neither worked at, nor endorsed their strip club, nevertheless, they used Pinder's image to mislead potential customers as to Pinder's employment at and/or affiliation with Defendant.

1220.   Defendant knew that their use of Pinder's image would cause consumer confusion as to Pinder's sponsorship and/or employment at Defendant's strip club.

1221.   Upon information and belief, Defendant's use of Pinder's image did in fact cause consumer confusion as to Pinder's employment at and/or endorsement of

Defendant's businesses, and the goods and services provided by Defendant.

1222.  As a direct and proximate result of Defendant's actions, Pinder has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Pinder's image, likeness and/or identity, or how Pinder's image, likeness and/or identity is being depicted by Defendant.

1223.  Further, any failure, neglect or default by Defendant will reflect adversely on Pinder as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Pinder to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Pinder.

1224.  Due to Defendant's unauthorized use of Pinder's image, Pinder has been damaged in an amount to be determined at trial.

**WHEREFORE**, Pinder respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**PINDER COUNT III**</u>
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness against Defendant)**

1225.  Plaintiff Pinder re-alleges paragraphs 1 through 15, 28, 33 through 35, 39 through 49, 244 through 261 above, and incorporates the same by reference as though fully set forth herein.

1226.   Pinder has a statutory right of publicity under Section 540.08, Florida Statutes.

1227.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

1228.   Despite the clear language of Section 540.08, Defendant published Pinder's image, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

1229.   At all times relevant to this action, Pinder was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1230.   Defendant never sought permission or authority to use Pinder's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1231.   Pinder never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1232.   Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Pinder's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1233.   Defendant had actual or constructive knowledge or consciously disregarded

the wrongfulness of their conduct, deprived Pinder of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pinder.

1234.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Pinder's rights.

1235.   Alternatively, Defendant acted negligently towards Pinder in using and disseminating, without authority, her image, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

1236.   Defendant has caused irreparable harm to Pinder, her reputation and brand by attributing to Pinder the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1237.   Defendant has also damaged Pinder as a direct and proximate result of their unauthorized use of Pinder's image, likeness and/or identity without compensating Pinder. Defendant's conduct has been despicable and taken in conscious disregard of Pinder's rights.

**WHEREFORE**, Pinder respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## <u>PINDER COUNT IV</u>

**(Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against Defendant)**

1238.   Plaintiff Pinder re-alleges paragraphs 1 through 15, 28, 33 through 35, 39 through 49, 244 through 261 above, and incorporates the same by reference as though fully set forth herein.

1239.   Pinder has a common law right of publicity.

1240.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Pinder without express written or oral consent to such use.

1241.   At all times relevant to this action, Pinder was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1242.   Defendant published, printed, displayed and/or publicly used Pinder's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

1243.   Defendant took these actions without Pinder's permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Pinder's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1244.   Pinder never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1245.   Defendant intentionally or, at a minimum, recklessly, published, printed,

displayed, or otherwise publicly disseminated or used Pinder's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1246.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Pinder of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pinder.

1247.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Pinder's rights.

1248.   Alternatively, Defendant acted negligently towards Pinder in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

1249.   Defendant has caused irreparable harm to Pinder, her reputation and brand by attributing to Pinder the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1250.   Defendant has also damaged Pinder as a direct and proximate result of their unauthorized use of Pinder's image, likeness and/or identity without compensating Pinder.

**WHEREFORE**, Pinder respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## PINDER COUNT V
### (Conversion against Defendant)

1251.   Plaintiff Pinder re-alleges paragraphs 1 through 15, 28, 33 through 35, 39 through 49, 244 through 261 above, and incorporates the same by reference as though fully set forth herein.

1252.   Pinder is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1253.   Pinder has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1254.   By their acts and conduct alleged above, Defendant has converted Pinder's property rights, including without limitation, Pinder's image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

1255.   Pinder is informed and believes and on such information alleges that Defendant has refused to return Pinder's property to her or pay for the deprivation of Pinder's property.

1256.   As a result, Pinder has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Pinder alleges that the same are within the jurisdiction of the Court.

1257.   Further, Pinder is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Pinder's rights.

**WHEREFORE**, Pinder respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

## PINDER COUNT VI
### (Unjust Enrichment against Defendant)

1258.   Plaintiff Pinder re-alleges paragraphs 1 through 15, 28, 33 through 35, 39 through 49, 244 through 261 above, and incorporates the same by reference as though fully set forth herein.

1259.   Pinder has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

1260.   At all times relevant to this action, Pinder was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1261.   Defendant were aware that Pinder's image, likeness and/or identity were valuable.

1262.   Defendant were aware of the resulting benefit from usage of Pinder's image, likeness and/or identity.

1263.   Defendant has retained profits and other benefits conferred upon them by using Pinder's image, likeness and/or identity to promote and advertise Defendant's businesses and/or Defendant's events and activities.

1264.   It would be inequitable for Defendant to retain the benefits conferred upon them by using Pinder's image, likeness and/or identity without paying fair value for the

image.

**WHEREFORE**, Pinder respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Paola Cañas' Causes of Action*

**CAÑAS COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against Defendant)**

1265.   Plaintiff Cañas re-alleges paragraphs 1 through 15, 29, 33 through 35, 39 through 49, 262 through 280 above, and incorporates the same by reference as though fully set forth herein.

1266.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Cañas from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1267.   At all times relevant to this action, Cañas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1268.   Defendant used Cañas' image, likeness and/or identity as described herein without authority to create the perception that Cañas worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or

consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

1269.   Defendant's use of Cañas' image, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

1270.   Defendant's unauthorized use of Cañas' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Cañas worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Cañas would participate in or appear at the specific events promoted in the advertisements.

1271.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Cañas worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

1272.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Cañas worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to

advertise, promote, and market Defendant's businesses or Defendant's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

1273.   Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

1274.   Defendant's unauthorized use of Cañas' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

1275.   Defendant knew or should have known that their unauthorized use of Cañas' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1276.   Defendant's unauthorized use of Cañas' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1277.   As such, the present case is an exceptional case warranting an award of

reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1278.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Cañas of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Cañas.

1279.   The method and manner in which Defendant used the image of Cañas further evinces that Defendant were aware of or consciously disregarded the fact that Cañas did not consent to Defendant's use of the image to advertise Defendant's businesses.

1280.   Defendant has caused irreparable harm to Cañas, her reputation and brand by attributing to Cañas the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1281.   Defendant's unauthorized use of Cañas' image, likeness and/or identity directly and proximately caused and continue to cause damage to Cañas in an amount to be determined at trial.

**WHEREFORE**, Cañas respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### CAÑAS COUNT II
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):
False Endorsement against Defendant)**

1282.   Plaintiff Cañas re-alleges paragraphs 1 through 15, 29, 33 through 35, 39 through 49, 262 through 280 above, and incorporates the same by reference as though fully

set forth herein.

1283. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Cañas from the conduct described herein.

1284. Defendant used Cañas' image to create the false impression with the public that Cañas either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

1285. Thus, this was done in furtherance of Defendant's commercial benefit.

1286. Cañas is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Cañas' images in magazines and online.

1287. Both Cañas and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

1288. As such, an unauthorized use of Cañas' image to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Cañas.

1289. Defendant's use of Cañas' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Cañas' fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Cañas, or sponsored, approved or associated with Cañas.

1290. Despite the fact that Defendant were at all times aware that Cañas neither worked at, nor endorsed their strip club, nevertheless, they used Cañas' image to mislead

potential customers as to Cañas' employment at and/or affiliation with Defendant.

1291.   Defendant knew that their use of Cañas' image would cause consumer confusion as to Cañas' sponsorship and/or employment at Defendant's strip club.

1292.   Upon information and belief, Defendant's use of Cañas' image did in fact cause consumer confusion as to Cañas' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1293.   As a direct and proximate result of Defendant's actions, Cañas has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Cañas' image, likeness and/or identity, or how Cañas' image, likeness and/or identity is being depicted by Defendant.

1294.   Further, any failure, neglect or default by Defendant will reflect adversely on Cañas as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Cañas to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Cañas.

1295.   Due to Defendant's unauthorized use of Cañas' image, Cañas has been damaged in an amount to be determined at trial.

**WHEREFORE**, Cañas respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## CAÑAS COUNT III
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against Defendant)

1296.   Plaintiff Cañas re-alleges paragraphs 1 through 15, 29, 33 through 35, 39 through 49, 262 through 280 above, and incorporates the same by reference as though fully set forth herein.

1297.   Cañas has a statutory right of publicity under Section 540.08, Florida Statutes.

1298.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

1299.   Despite the clear language of Section 540.08, Defendant published Cañas' image, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

1300.   At all times relevant to this action, Cañas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1301.   Defendant never sought permission or authority to use Cañas' image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1302.   Cañas never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1303.   Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Cañas' image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1304.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Cañas of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Cañas.

1305.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Cañas' rights.

1306.   Alternatively, Defendant acted negligently towards Cañas in using and disseminating, without authority, her image, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

1307.   Defendant has caused irreparable harm to Cañas, her reputation and brand by attributing to Cañas the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1308.   Defendant has also damaged Cañas as a direct and proximate result of their unauthorized use of Cañas' image, likeness and/or identity without compensating Cañas. Defendant's conduct has been despicable and taken in conscious disregard of Cañas' rights.

**WHEREFORE**, Cañas respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of

Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## CAÑAS COUNT IV
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against Defendant)

1309.   Plaintiff Cañas re-alleges paragraphs 1 through 15, 29, 33 through 35, 39 through 49, 262 through 280 above, and incorporates the same by reference as though fully set forth herein.

1310.   Cañas has a common law right of publicity.

1311.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Cañas without express written or oral consent to such use.

1312.   At all times relevant to this action, Cañas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1313.   Defendant published, printed, displayed and/or publicly used Cañas' image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

1314.   Defendant took these actions without Cañas' permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Cañas' image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1315.   Cañas never consented to, permitted, assigned, licensed, or otherwise

agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1316.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Cañas' image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1317.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Cañas of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Cañas.

1318.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Cañas' rights.

1319.   Alternatively, Defendant acted negligently towards Cañas in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

1320.   Defendant has caused irreparable harm to Cañas, her reputation and brand by attributing to Cañas the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1321.   Defendant has also damaged Cañas as a direct and proximate result of their unauthorized use of Cañas' image, likeness and/or identity without compensating Cañas.

**WHEREFORE**, Cañas respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including,

but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## CAÑAS COUNT V
### (Conversion against Defendant)

1322.   Plaintiff Cañas re-alleges paragraphs 1 through 15, 29, 33 through 35, 39 through 49, 262 through 280 above, and incorporates the same by reference as though fully set forth herein.

1323.   Cañas is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1324.   Cañas has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1325.   By their acts and conduct alleged above, Defendant has converted Cañas' property rights, including without limitation, Cañas' image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

1326.   Cañas is informed and believes and on such information alleges that Defendant has refused to return Cañas' property to her or pay for the deprivation of Cañas' property.

1327.   As a result, Cañas has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Cañas alleges that the same are within the jurisdiction of the Court.

1328.   Further, Cañas is informed and believes and thereon alleges that in engaging

in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Cañas' rights.

**WHEREFORE**, Cañas respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

<u>**CAÑAS COUNT VI**</u>
**(Unjust Enrichment against Defendant)**

1329.  Plaintiff Cañas re-alleges paragraphs 1 through 15, 29, 33 through 35, 39 through 49, 262 through 280 above, and incorporates the same by reference as though fully set forth herein.

1330.  Cañas has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

1331.  At all times relevant to this action, Cañas was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1332.  Defendant were aware that Cañas' image, likeness and/or identity were valuable.

1333.  Defendant were aware of the resulting benefit from usage of Cañas' image, likeness and/or identity.

1334.  Defendant has retained profits and other benefits conferred upon them by using Cañas' image, likeness and/or identity to promote and advertise Defendant's

businesses and/or Defendant's events and activities.

1335.   It would be inequitable for Defendant to retain the benefits conferred upon them by using Cañas' image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Cañas respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Sara Underwood's Causes of Action*

**UNDERWOOD COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against Defendant)**

1336.   Plaintiff Underwood re-alleges paragraphs 1 through 15, 30, 33 through 35, 39 through 49, 281 through 295 above, and incorporates the same by reference as though fully set forth herein.

1337.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Underwood from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1338.   At all times relevant to this action, Underwood was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully

converted by Defendant for Defendant's benefit.

1339. Defendant used Underwood's image, likeness and/or identity as described herein without authority to create the perception that Underwood worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

1340. Defendant's use of Underwood's image, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

1341. Defendant's unauthorized use of Underwood's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Underwood worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Underwood would participate in or appear at the specific events promoted in the advertisements.

1342. Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Underwood worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

1343.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Underwood worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

1344.   Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

1345.  Defendant's unauthorized use of Underwood's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

1346.  Defendant knew or should have known that their unauthorized use of Underwood's image, likeness and/or identity would cause consumer confusion as

described in this Complaint.

1347.  Defendant's unauthorized use of Underwood's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1348.  As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1349.  Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Underwood of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Underwood.

1350.  The method and manner in which Defendant used the image of Underwood further evinces that Defendant were aware of or consciously disregarded the fact that Underwood did not consent to Defendant's use of the image to advertise Defendant's businesses.

1351.  Defendant has caused irreparable harm to Underwood, her reputation and brand by attributing to Underwood the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1352.  Defendant's unauthorized use of Underwood's image, likeness and/or identity directly and proximately caused and continue to cause damage to Underwood in an amount to be determined at trial.

**WHEREFORE**, Underwood respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment

interest, and/or such further relief that is just and proper.

## UNDERWOOD COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Endorsement against Defendant)

1353.   Plaintiff Underwood re-alleges paragraphs 1 through 15, 30, 33 through 35, 39 through 49, 281 through 295 above, and incorporates the same by reference as though fully set forth herein.

1354.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Underwood from the conduct described herein.

1355.   Defendant used Underwood's image to create the false impression with the public that Underwood either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

1356.   Thus, this was done in furtherance of Defendant's commercial benefit.

1357.   Underwood is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Underwood's images in magazines and online.

1358.   Both Underwood and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

1359.   As such, an unauthorized use of Underwood's image to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Underwood.

1360.   Defendant's use of Underwood's image, likeness and/or identity constitutes

a false designation of the source of origin, sponsorship, approval, or association which has deceived Underwood's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Underwood, or sponsored, approved or associated with Underwood.

1361.  Despite the fact that Defendant were at all times aware that Underwood neither worked at, nor endorsed their strip club, nevertheless, they used Underwood's image to mislead potential customers as to Underwood's employment at and/or affiliation with Defendant.

1362.  Defendant knew that their use of Underwood's image would cause consumer confusion as to Underwood's sponsorship and/or employment at Defendant's strip club.

1363.  Upon information and belief, Defendant's use of Underwood's image did in fact cause consumer confusion as to Underwood's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1364.  As a direct and proximate result of Defendant's actions, Underwood has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Underwood's image, likeness and/or identity, or how Underwood's image, likeness and/or identity is being depicted by Defendant.

1365.  Further, any failure, neglect or default by Defendant will reflect adversely on Underwood as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Underwood to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable

expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Underwood.

1366.   Due to Defendant's unauthorized use of Underwood's image, Underwood has been damaged in an amount to be determined at trial.

**WHEREFORE**, Underwood respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## UNDERWOOD COUNT III
### (Violation of Fla. Stat. § 540.08: Right of Publicity; Unauthorized Misappropriation of Name/Likeness against Defendant)

1367.   Plaintiff Underwood re-alleges paragraphs 1 through 15, 30, 33 through 35, 39 through 49, 281 through 295 above, and incorporates the same by reference as though fully set forth herein.

1368.   Underwood has a statutory right of publicity under Section 540.08, Florida Statutes.

1369.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

1370.   Despite the clear language of Section 540.08, Defendant published Underwood's image, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and

activities.

1371.   At all times relevant to this action, Underwood was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1372.   Defendant never sought permission or authority to use Underwood's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1373.   Underwood never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1374.   Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Underwood's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1375.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Underwood of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Underwood.

1376.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Underwood's rights.

1377.   Alternatively, Defendant acted negligently towards Underwood in using and disseminating, without authority, her image, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events

and activities.

1378.   Defendant has caused irreparable harm to Underwood, her reputation and brand by attributing to Underwood the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1379.   Defendant has also damaged Underwood as a direct and proximate result of their unauthorized use of Underwood's image, likeness and/or identity without compensating Underwood. Defendant's conduct has been despicable and taken in conscious disregard of Underwood's rights.

**WHEREFORE**, Underwood respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

<u>**UNDERWOOD COUNT IV**</u>
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against Defendant**)

1380.   Plaintiff Underwood re-alleges paragraphs 1 through 15, 30, 33 through 35, 39 through 49, 281 through 295 above, and incorporates the same by reference as though fully set forth herein.

1381.   Underwood has a common law right of publicity.

1382.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Underwood without express written or oral consent to such use.

1383.   At all times relevant to this action, Underwood was and is the exclusive

owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1384. Defendant published, printed, displayed and/or publicly used Underwood's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

1385. Defendant took these actions without Underwood's permission, consent or authority. In fact, Defendant never sought permission nor authority to use Underwood's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1386. Underwood never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1387. Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Underwood's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1388. Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Underwood of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Underwood.

1389. At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Underwood's rights.

1390.   Alternatively, Defendant acted negligently towards Underwood in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

1391.   Defendant has caused irreparable harm to Underwood, her reputation and brand by attributing to Underwood the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1392.   Defendant has also damaged Underwood as a direct and proximate result of their unauthorized use of Underwood's image, likeness and/or identity without compensating Underwood.

**WHEREFORE**, Underwood respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## UNDERWOOD COUNT V
### (Conversion against Defendant)

1393.   Plaintiff Underwood re-alleges paragraphs 1 through 15, 30, 33 through 35, 39 through 49, 281 through 295 above, and incorporates the same by reference as though fully set forth herein.

1394.   Underwood is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1395.   Underwood has, and at all times relevant herein had, an intangible property

interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1396.  By their acts and conduct alleged above, Defendant has converted Underwood's property rights, including without limitation, Underwood's image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

1397.  Underwood is informed and believes and on such information alleges that Defendant has refused to return Underwood's property to her or pay for the deprivation of Underwood's property.

1398.  As a result, Underwood has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Underwood alleges that the same are within the jurisdiction of the Court.

1399.  Further, Underwood is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Underwood's rights.

**WHEREFORE**, Underwood respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

## <u>UNDERWOOD COUNT VI</u>
### (Unjust Enrichment against Defendant)

1400.  Plaintiff Underwood re-alleges paragraphs 1 through 15, 30, 33 through 35, 39 through 49, 281 through 295 above, and incorporates the same by reference as though

fully set forth herein.

1401. Underwood has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

1402. At all times relevant to this action, Underwood was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1403. Defendant were aware that Underwood's image, likeness and/or identity were valuable.

1404. Defendant were aware of the resulting benefit from usage of Underwood's image, likeness and/or identity.

1405. Defendant has retained profits and other benefits conferred upon them by using Underwood's image, likeness and/or identity to promote and advertise Defendant's businesses and/or Defendant's events and activities.

1406. It would be inequitable for Defendant to retain the benefits conferred upon them by using Underwood's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Underwood respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Tiffany Toth Gray's Causes of Action*

### <u>GRAY COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**

The Casas Law Firm, P.C.
Brickell Bayview Center 80 S.W. 8th Street, Suite 2000, Miami, FL 33130
233

**False Advertising against Defendant**)

1407.   Plaintiff Gray re-alleges paragraphs 1 through 15, 31, 33 through 35, 39 through 49, 296 through 310 above, and incorporates the same by reference as though fully set forth herein.

1408.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Gray from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1409.   At all times relevant to this action, Gray was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1410.   Defendant used Gray's image, likeness and/or identity as described herein without authority to create the perception that Gray worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

1411.   Defendant's use of Gray's image, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as described in this Complaint was false and misleading.

1412.   Defendant's unauthorized use of Gray's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Gray worked at or was otherwise affiliated with Defendant, endorsed

Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Gray would participate in or appear at the specific events promoted in the advertisements.

1413.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Gray worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

1414.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Gray worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.  Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

1415.   Defendant's advertisements, promotions and marketing of Defendant's strip

club and events occur in and are targeted to interstate commerce. Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

1416.   Defendant's unauthorized use of Gray's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

1417.   Defendant knew or should have known that their unauthorized use of Gray's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1418.   Defendant's unauthorized use of Gray's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1419.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1420.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Gray of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gray.

1421.   The method and manner in which Defendant used the image of Gray further evinces that Defendant were aware of or consciously disregarded the fact that Gray did not consent to Defendant's use of the image to advertise Defendant's businesses.

1422.  Defendant has caused irreparable harm to Gray, her reputation and brand by attributing to Gray the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1423.  Defendant's unauthorized use of Gray's image, likeness and/or identity directly and proximately caused and continue to cause damage to Gray in an amount to be determined at trial.

**WHEREFORE**, Gray respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**GRAY COUNT II**</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Endorsement against Defendant)**

1424.  Plaintiff Gray re-alleges paragraphs 1 through 15, 31, 33 through 35, 39 through 49, 296 through 310 above, and incorporates the same by reference as though fully set forth herein.

1425. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Gray from the conduct described herein.

1426.  Defendant used Gray's image to create the false impression with the public that Gray either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

1427.  Thus, this was done in furtherance of Defendant's commercial benefit.

1428.   Gray is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Gray's images in magazines and online.

1429.   Both Gray and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

1430.   As such, an unauthorized use of Gray's image to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Gray.

1431.   Defendant's use of Gray's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Gray's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Gray, or sponsored, approved or associated with Gray.

1432.   Despite the fact that Defendant were at all times aware that Gray neither worked at, nor endorsed their strip club, nevertheless, they used Gray's image to mislead potential customers as to Gray's employment at and/or affiliation with Defendant.

1433.   Defendant knew that their use of Gray's image would cause consumer confusion as to Gray's sponsorship and/or employment at Defendant's strip club.

1434.   Upon information and belief, Defendant's use of Gray's image did in fact cause consumer confusion as to Gray's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1435.   As a direct and proximate result of Defendant's actions, Gray has no control over the nature and quality of the line of products or services provided by Defendant, the

nature of the advertisement depicting Gray's image, likeness and/or identity, or how Gray's image, likeness and/or identity is being depicted by Defendant.

1436.   Further, any failure, neglect or default by Defendant will reflect adversely on Gray as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Gray to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Gray.

1437.   Due to Defendant's unauthorized use of Gray's image, Gray has been damaged in an amount to be determined at trial.

**WHEREFORE**, Gray respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### GRAY COUNT III
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness against Defendant)**

1438.   Plaintiff Gray re-alleges paragraphs 1 through 15, 31, 33 through 35, 39 through 49, 296 through 310 above, and incorporates the same by reference as though fully set forth herein.

1439.   Gray has a statutory right of publicity under Section 540.08, Florida Statutes.

1440.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish,

print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

1441.   Despite the clear language of Section 540.08, Defendant published Gray's image, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

1442.   At all times relevant to this action, Gray was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1443.   Defendant never sought permission or authority to use Gray's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1444.   Gray never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1445.   Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Gray's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1446.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Gray of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gray.

1447.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gray's rights.

1448.   Alternatively, Defendant acted negligently towards Gray in using and disseminating, without authority, her image, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

1449.   Defendant has caused irreparable harm to Gray, her reputation and brand by attributing to Gray the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1450.   Defendant has also damaged Gray as a direct and proximate result of their unauthorized use of Gray's image, likeness and/or identity without compensating Gray. Defendant's conduct has been despicable and taken in conscious disregard of Gray's rights.

**WHEREFORE**, Gray respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

### GRAY COUNT IV
**(Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against Defendant)**

1451.   Plaintiff Gray re-alleges paragraphs 1 through 15, 31, 33 through 35, 39 through 49, 296 through 310 above, and incorporates the same by reference as though fully set forth herein.

1452.   Gray has a common law right of publicity.

1453.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Gray without express written or oral consent to such use.

1454.   At all times relevant to this action, Gray was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1455.   Defendant published, printed, displayed and/or publicly used Gray's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

1456.   Defendant took these actions without Gray's permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Gray's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1457.   Gray never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1458.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Gray's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1459.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Gray of a property interest, and further acted

with actual or constructive knowledge of the high probability that injury or damage would result to Gray.

1460.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gray's rights.

1461.   Alternatively, Defendant acted negligently towards Gray in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

1462.   Defendant has caused irreparable harm to Gray, her reputation and brand by attributing to Gray the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1463.   Defendant has also damaged Gray as a direct and proximate result of their unauthorized use of Gray's image, likeness and/or identity without compensating Gray.

**WHEREFORE**, Gray respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## GRAY COUNT V
### (Conversion against Defendant)

1464.   Plaintiff Gray re-alleges paragraphs 1 through 15, 31, 33 through 35, 39 through 49, 296 through 310 above, and incorporates the same by reference as though fully set forth herein.

1465.   Gray is, and all at relevant times was, the exclusive owner of all rights, title,

and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1466.   Gray has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1467.   By their acts and conduct alleged above, Defendant has converted Gray's property rights, including without limitation, Gray's image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

1468.   Gray is informed and believes and on such information alleges that Defendant has refused to return Gray's property to her or pay for the deprivation of Gray's property.

1469.   As a result, Gray has suffered compensatory, punitive and exemplary damages to be determined according to proof at trial; but Gray alleges that the same are within the jurisdiction of the Court.

1470.   Further, Gray is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Gray's rights.

**WHEREFORE**, Gray respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

## <u>GRAY COUNT VI</u>

**(Unjust Enrichment against Defendant)**

1471.   Plaintiff Gray re-alleges paragraphs 1 through 15, 31, 33 through 35, 39 through 49, 296 through 310 above, and incorporates the same by reference as though fully set forth herein.

1472.   Gray has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

1473.   At all times relevant to this action, Gray was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1474.   Defendant were aware that Gray's image, likeness and/or identity were valuable.

1475.   Defendant were aware of the resulting benefit from usage of Gray's image, likeness and/or identity.

1476.   Defendant has retained profits and other benefits conferred upon them by using Gray's image, likeness and/or identity to promote and advertise Defendant's businesses and/or Defendant's events and activities.

1477.   It would be inequitable for Defendant to retain the benefits conferred upon them by using Gray's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Gray respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and

proper.

*Plaintiff Tyran Makelle Richard's Causes of Action*

<u>**RICHARD COUNT I**</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against Defendant**)

1478.   Plaintiff Richard re-alleges paragraphs 1 through 15, 32, 33 through 35, 39 through 49, 311 through 325 above and incorporates the same by reference as though fully set forth herein.

1479.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Richard from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."   15 U.S.C. §1125(a)(1)(B).

1480.   At all times relevant to this action, Richard was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1481.   Defendant used Richard's image, likeness and/or identity as described herein without authority to create the perception that Richard worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's businesses and/or Defendant's events and activities.

1482.   Defendant's use of Richard's image, likeness and/or identity to advertise, promote and market Defendant's businesses and/or Defendant's events and activities as

described in this Complaint was false and misleading.

1483.   Defendant's unauthorized use of Richard's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Richard worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Richard would participate in or appear at the specific events promoted in the advertisements.

1484.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in their events, as well as specifically whether Richard worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.

1485.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Richard worked at or was otherwise affiliated with Defendant, endorsed Defendant's businesses or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's businesses or Defendant's events and activities.   Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material

effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

1486.   Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

1487.   Defendant's unauthorized use of Richard's image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

1488.   Defendant knew or should have known that their unauthorized use of Richard's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

1489.   Defendant's unauthorized use of Richard's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1490.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

1491.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Richard of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would

result to Richard.

1492.   The method and manner in which Defendant used the image of Richard further evinces that Defendant were aware of or consciously disregarded the fact that Richard did not consent to Defendant's use of the image to advertise Defendant's businesses.

1493.   Defendant has caused irreparable harm to Richard, her reputation and brand by attributing to Richard the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1494.   Defendant's unauthorized use of Richard's image, likeness and/or identity directly and proximately caused and continue to cause damage to Richard in an amount to be determined at trial.

**WHEREFORE**, Richard respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## RICHARD COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement against Defendant)

1495.   Plaintiff Richard re-alleges paragraphs 1 through 15, 32, 33 through 35, 39 through 49, 311 through 325 above, and incorporates the same by reference as though fully set forth herein.

1496.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Richard from the conduct described herein.

1497.   Defendant used Richard's image to create the false impression with the public that Richard either worked at Defendant's strip club, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant.

1498.   Thus, this was done in furtherance of Defendant's commercial benefit.

1499.   Richard is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Richard's images in magazines and online.

1500.   Both Richard and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

1501.   As such, an unauthorized use of Richard's image to promote strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Richard.

1502.   Defendant's use of Richard's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Richard's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Richard, or sponsored, approved or associated with Richard.

1503.   Despite the fact that Defendant were at all times aware that Richard neither worked at, nor endorsed their strip club, nevertheless, they used Richard's image to mislead potential customers as to Richard's employment at and/or affiliation with Defendant.

1504.   Defendant knew that their use of Richard's image would cause consumer

confusion as to Richard's sponsorship and/or employment at Defendant's strip club.

1505. Upon information and belief, Defendant's use of Richard's image did in fact cause consumer confusion as to Richard's employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

1506. As a direct and proximate result of Defendant's actions, Richard has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Richard's image, likeness and/or identity, or how Richard's image, likeness and/or identity is being depicted by Defendant.

1507. Further, any failure, neglect or default by Defendant will reflect adversely on Richard as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Richard to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Richard.

1508. Due to Defendant's unauthorized use of Richard's image, Richard has been damaged in an amount to be determined at trial.

**WHEREFORE**, Richard respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**RICHARD COUNT III**
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against Defendant)**

1509.   Plaintiff Richard re-alleges paragraphs 1 through 15, 32, 33 through 35, 39 through 49, 311 through 325 above, and incorporates the same by reference as though fully set forth herein.

1510.   Richard has a statutory right of publicity under Section 540.08, Florida Statutes.

1511.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

1512.   Despite the clear language of Section 540.08, Defendant published Richard's image, likeness and/or identity on social media outlets, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

1513.   At all times relevant to this action, Richard was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1514.   Defendant never sought permission or authority to use Richard's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1515.   Richard never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote,

market or endorse Defendant's businesses or any of Defendant's events. or activity.

1516.   Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Richard's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1517.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Richard of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Richard.

1518.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Richard's rights.

1519.   Alternatively, Defendant acted negligently towards Richard in using and disseminating, without authority, her image, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

1520.   Defendant has caused irreparable harm to Richard, her reputation and brand by attributing to Richard the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1521.   Defendant has also damaged Richard as a direct and proximate result of their unauthorized use of Richard's image, likeness and/or identity without compensating Richard. Defendant's conduct has been despicable and taken in conscious disregard of Richard's rights.

**WHEREFORE**, Richard respectfully requests that the Court issue a judgment

against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

### RICHARD COUNT IV
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against Defendant)**

1522.   Plaintiff Richard re-alleges paragraphs 1 through 15, 32, 33 through 35, 39 through 49, 311 through 325 above, and incorporates the same by reference as though fully set forth herein.

1523.   Richard has a common law right of publicity.

1524.   Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Richard without express written or oral consent to such use.

1525.   At all times relevant to this action, Richard was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1526.   Defendant published, printed, displayed and/or publicly used Richard's image, likeness and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

1527.   Defendant took these actions without Richard's permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Richard's image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses

or any of Defendant's events. or activity.

1528.   Richard never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's businesses or any of Defendant's events. or activity.

1529.   Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Richard's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1530.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of their conduct, deprived Richard of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Richard.

1531.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Richard's rights.

1532.   Alternatively, Defendant acted negligently towards Richard in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

1533.   Defendant has caused irreparable harm to Richard, her reputation and brand by attributing to Richard the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

1534.   Defendant has also damaged Richard as a direct and proximate result of their unauthorized use of Richard's image, likeness and/or identity without compensating

Richard.

**WHEREFORE**, Richard respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## RICHARD COUNT V
### (Conversion against Defendant)

1535.   Plaintiff Richard re-alleges paragraphs 1 through 15, 32, 33 through 35, 39 through 49, 311 through 325 above, and incorporates the same by reference as though fully set forth herein.

1536.   Richard is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1537.   Richard has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1538.   By their acts and conduct alleged above, Defendant has converted Richard's property rights, including without limitation, Richard's image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

1539.   Richard is informed and believes and on such information alleges that Defendant has refused to return Richard's property to her or pay for the deprivation of Richard's property.

1540.   As a result, Richard has suffered compensatory, punitive and exemplary

damages to be determined according to proof at trial; but Richard alleges that the same are within the jurisdiction of the Court.

1541.   Further, Richard is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression, fraud, and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Richard's rights.

**WHEREFORE**, Richard respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

**RICHARD COUNT VI**
**(Unjust Enrichment against Defendant)**

1542.   Plaintiff Richard re-alleges paragraphs 1 through 15, 32, 33 through 35, 39 through 49, 311 through 325 above, and incorporates the same by reference as though fully set forth herein.

1543.   Richard has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

1544.   At all times relevant to this action, Richard was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

1545.   Defendant were aware that Richard's image, likeness and/or identity were valuable.

1546.   Defendant were aware of the resulting benefit from usage of Richard's

image, likeness and/or identity.

1547.   Defendant has retained profits and other benefits conferred upon them by using Richard's image, likeness and/or identity to promote and advertise Defendant's businesses and/or Defendant's events and activities.

1548.   It would be inequitable for Defendant to retain the benefits conferred upon them by using Richard's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Richard respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendant, jointly and severally in an amount to be determined at trial and as follows:

1.      For damages as provided in 15 U.S.C. § 1125(a);

2.      For attorneys' fees and costs of suit, as provided for in 15 U.S.C. § 1125(a);

3.      For damages as provided in Fla. Stat. §540.08;

4.      For general damages according to proof;

5.      For special damages according to proof;

6.      For consequential damages according to proof;

7.      For reasonable attorneys' fees and costs as permitted by law;

8.    For prejudgment interest and royalties at the legal rate;

9.    For such other relief as this Court deems just and proper.; and

10.   Plaintiff reserve the right to amend the pleadings to include punitive damages

      pursuant to Fla. Stat. §768.72.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

Dated: June 5, 2018                    Respectfully Submitted,

                                       THE CASAS LAW FIRM, P.C.

                                       By:  */s/ Ludmila Khomiak*
                                       Ludmila Khomiak, Esq.
                                       Florida Bar No.: 91757
                                       mila@casaslawfirm.com
                                       Brickell Bayview Center
                                       80 S. W. 8th Street, Suite 2000
                                       Miami, FL 33130
                                       Phone: (786) 671-3244
                                       Fax: (786) 671-3243

                                       Joseph N. Casas (*pro hac vice forthcoming*)
                                       402 West Broadway, Suite 400
                                       San Diego, California 92101
                                       joseph@casaslawfirm.com

                                       **FREEDMAN BOYD HOLLANDER
                                       GOLDBERG URIAS & WARD PA.**

                                       Vincent J. Ward (*pro hac vice forthcoming*)
                                       David H. Urias (*pro hac vice forthcoming)*
                                       Nicholas T. Hart (*pro hac vice forthcoming*)
                                       20 First Plaza NW, Suite 700
                                       Albuquerque, NM 87102
                                       T: 505-842-9960
                                       vjw@fbdlaw.com
                                       dhu@fbdlaw.com
                                       NickH@fbdlaw.com

                                       *Attorneys for Plaintiffs*